# Richmond

## R. Stuart Royer v. Board of County Supervisors of Albemarle County.

October 14, 1940.

Record No. 2292.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Robert E. Scott* and *C. Armonde Paxson,* for the plaintiff in error.

*H. W. Walsh* and *Lyttleton Waddell,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

R. Stuart Royer, who will sometimes be referred to as the plaintiff, filed with the Board of County Supervisors of Albemarle county a claim for $3,424.95 for services rendered as a consulting engineer in the preparation of plans and specifications for the construction of a sewer system and disposal plant in Fry's Springs Sanitary District in that county. From the action of the board in disallowing the claim Royer appealed to the Circuit Court of Albemarle county in accordance with the provisions of Code, section 2761. Issue was joined and upon a jury trial there was a verdict for the plaintiff for the full amount claimed.

Being of opinion that under the contract between the parties the plaintiff's services were rendered on a contingent fee basis, that the plaintiff was to be paid nothing for his work unless the voters of the Sanitary District approved the bond issue necessary to finance a part of the cost of constructing the project, and unless the project was in fact constructed, and that neither of these contingencies had occurred and hence the plaintiff was not entitled to a recovery,· the trial court set aside the verdict and entered a final judgment for the Board of Supervisors. To review this action the present writ of error has been awarded the plaintiff below.

The facts are not disputed. It is conceded that the services were performed in a satisfactory manner and that the plaintiff is entitled to the full amount claimed, if anything. The other material facts may be summarized as follows:

Prior to August, 1935, a certain portion of Albemarle county adjacent to the city of Charlottesville was set up and established as a sanitary district known as Fry's Springs Sanitary District. H. A. Haden, the county executive, was authorized and directed to apply to the Federal Emergency Administration, commonly known as the P. W. A., for a grant of funds for the purpose of aiding in financing the construction of a sewer system and sewage disposal plant for the district.

It became necessary that the board employ a civil engineer to make a proper application to the Federal authorities for the grant and to prepare the necessary plans and specifications for the construction of the project. Several engineers, including the plaintiff, were invited to submit bids for these proposed services. The proposal of the plaintiff was accepted by a resolution of the Board of Supervisors at a meeting held on August 31, 1935. By this resolution it was agreed that the plaintiff would:

"(1) Do the necessary work to prepare the application to the Federal Administration of Public Works at the actual cost to him, not including his time, not to exceed $175.

"(2) In the event the application is approved, and the offer of the Government to assist in the financing of the Project is accepted by this Board, to prepare and furnish the complete plans and specifications, including the supervision of the letting of the contract for the Project, for a fee of 5 per cent of the cost of construction."

In accordance with the terms of this resolution the plaintiff promptly prepared and filed the application with the Federal Administration of Public Works, and for such services was paid the agreed fee of $175.

The county's share of the cost of constructing the project was to be paid out of the proceeds of a bond issue to be approved by a majority of the voters in the Sanitary District. The Circuit Court of Albemarle county ordered an election to be held on February 4, 1936, for the purpose of voting on the proposed bond issue. Due to the failure of the electoral board to have the necessary ballots printed the election was not held on that date. Another date, not stated in the record, was fixed by the court. The election resulted in a majority vote against the bond issue.

In the meantime Federal funds available for projects of this nature were exhausted. Consequently the application for the grant was not approved and the plaintiff did nothing towards the preparation of the "complete plans and specifications" mentioned in the second paragraph of the resolution of the Board of Supervisors.

However, the application for the grant which had been lodged with the Federal Administration of Public Works in 1935 remained on file there. On June 28, 1938, after additional funds became available, the Federal agency wrote the county executive a letter offering to make a grant to the county in the amount of 45 per cent of the cost of the construction of the proposed sewer system and disposal plant provided the work on the project be begun and completed within a stated time.

At a meeting held on July 1, 1938, the Board of Supervisors adopted a resolution accepting this offer. Promptly thereafter the circuit court of the county ordered an elec-

tion to be held on August 2, 1938, for the purpose of submitting to the voters of the Sanitary District the approval or disapproval of a proposed bond issue to raise the necessary funds to pay the remaining 55 per cent of the cost of the project.

In the meantime the plaintiff had been notified of the favorable action of the Federal Emergency Administration on the board's application for a grant. He promptly got in touch with Haden, the county executive, and discussed the proposed project. Just what took place at these interviews is not disclosed in the record. However, under date of July 1, 1938, the plaintiff wrote Haden as follows:

"I forgot to remind you when I talked with you on the phone that the PWA Construction Bulletin—Revised 8/27/37 copy of which you probably have—Sheet 1—reads in part as follows:

" 'Upon approval of the project by the Public Works Administration, and not later than the adoption of the Government's offer to aid in the construction of the project, the Applicant should instruct its Consulting Engineer or Architect to proceed with preparation of final plans,' etc.

"While I realize I will have to take some chances on account of the Bond Election, etc., I will be willing to begin to get these plans in shape, if you will issue instructions to do so, and hereby agree not to hold the Board responsible for any further compensation unless the results of the election are affirmative. In other words, I will not put any further liability on the Board unless the project goes through."

To this letter the county executive replied under date of July 5, 1938, as follows:

"I am enclosing herewith official notification to proceed with the plans and specifications for the sewerage system and disposal plant at Fry's Spring. This is given you with the distinct understanding that the Board of County Supervisors is in no way obligating itself in the event the citizens do not approve the issuance of bonds for this purpose. This is in accordance with your letter of July 1, 1938.

"For your information, the Judge has fixed Tuesday, August 2, 1938, as the date of the election."

Enclosed in this letter was a formal authorization to the plaintiff "to proceed with the preparation of the final plans and specifications for this work."

Immediately after the exchange of this correspondence the plaintiff proceeded to do the work for which he now seeks compensation. Prior to this time it had not been done.

On August 2, 1938, the election on the proposed bond issue was held. On the face of the returns the majority of the voters favored the bond issue. However, in a proceeding to contest the election, the Circuit Court of Albemarle county, on November 2, 1938, entered an order declaring the election void for the reason that the electoral board had designated as judges of the election the judges of the Democratic primary election held on that day instead of the regular election judges of the county. A new election was then called for December 3, 1938.

In the meantime, in the latter part of August, 1938, the city of Charlottesville had instituted proceedings for the annexation of a large part of the territory included within the Fry's Springs Sanitary District. Consequently, when the bids for the construction of the proposed sewer system and disposal plant were opened on September 9, the Board of Supervisors was in a quandary. Manifestly the annexation to the city of Charlottesville of a large part of the territory included in the Sanitary District would preclude the necessity of the construction by the county of the sewer system and disposal plant. Then, too, the validity of the election held on August 2, 1938, had been called into question. In these circumstances the board pursued the only reasonable and sensible course open to it by passing a resolution conditionally accepting the lowest bid for the construction of the proposed sewer system and disposal plant and providing that, "a contract for the construction of said work, as heretofore prescribed by the plans, specifications and contract documents, shall be executed for said construction when, if and as the complications threatened by

said annexation proceeding shall be removed, and the validity of the election determined, and the issuance of bonds for said project duly authorized."

In a resolution passed at the same meeting, at which the plaintiff was present, the board approved and adopted the plans and specifications prepared by the plaintiff "as the official plans, specifications and contract documents to be used in connection with the prosecution of the work in such construction when, if and as the complications threatened by annexation may be removed, and the validity of the election determined, and issuance of bonds for the project duly authorized."

On September 16, 1938, the annexation court convened and on the following November 11 a final decree was entered, by the terms of which a large portion of the territory in the Fry's Springs Sanitary District was annexed to the city of Charlottesville.

On December 3, 1938, the election on the proposed bond issue was held. Due no doubt to the result of the annexation proceedings the majority of the voters decided against the bond issue.

Shortly thereafter the plaintiff's claim was submitted to and refused by the board.

The first and principal contention of the plaintiff is that the complete contract entered into between him and the Board of Supervisors is embodied in the resolution of August 31, 1935, by the terms of which his right to furnish the plans and specifications and to be paid therefor was conditioned upon the offer of the government to assist in financing the project and the acceptance by the board of such offer, and that these conditions were met when the board, on July 1, 1938, accepted the government's offer of financial assistance.

The Board of Supervisors, on its part, contends that the contract between the parties is embodied in its resolution of August 31, 1935, as modified by the correspondence which passed between the plaintiff and the county executive in July, 1938; that under the terms of this modified contract

the plaintiff's right to furnish the plans and specifications and to be paid therefor was conditioned not only upon the matters stated in the resolution, but also upon those stated in the correspondence, namely, that the necessary bond issue be ratified by a majority of the voters of the Sanitary District and that the project be carried through to its completion; and that neither of these last conditions has been fulfilled. This position of the board was clearly stated in its grounds of defense and was asserted throughout the trial.

We are of opinion that the trial court was correct in upholding the contention of the Board of Supervisors.

It is true that in 1935 the Board of Supervisors employed the plaintiff to file an application for a Federal grant and agreed that, in the event the application was approved and the offer of the government to assist in financing the project was accepted by the board, the latter would pay him for preparing and furnishing the necessary plans and specifications. The application was prepared and filed and the plaintiff was paid the agreed sum of $175 for this work. But because of the lack of funds the government did not approve the application.

Moreover, since the bond issue was not approved by the voters of the Sanitary District the board was not in a position to have accepted the grant even if its application had been approved.

Therefore, the stated contingency upon which the plaintiff had a right to proceed with the preparation of the plans and specifications had not occurred.

While the grant was approved in June, 1938, on the original application filed some three years previous, this might have occurred after the lapse of even a longer period. It does not make sense to say that under these circumstances the parties remained mutually obligated so that if at any time thereafter a Federal grant had been secured and accepted the board would have been bound to have employed the plaintiff and the latter would have been bound to have done the work.

It is clear, we think, that from the time of the refusal of the grant in 1936 until July, 1938, the plaintiff had no claim on the board and the latter had no claim on him. The original negotiations between the parties were terminated.

Indeed, the conduct of the parties themselves shows that they so interpreted the situation. Certainly that of the plaintiff demonstrates that he placed no such construction as that for which he now contends on his contract with the board. When the offer of the Federal authorities to make the grant was accepted by the board on July 1, 1938, did the plaintiff proceed forthwith to prepare the necessary plans and specifications? He did not. Nor did he insist that under his contract he had the right to do so. He renewed his negotiations with the county executive. While the details of these negotiations are not disclosed in the record it is apparent from the correspondence that passed between them that Haden, the county executive, had expressed some unwillingness to incur any engineering expense until the completion of the project was assured. Consequently, on July 1, 1938, the plaintiff wrote Haden that, "While I realize I will have to take some chances on account of the Bond Election, etc., I will be willing to begin to get these plans in shape, if you will issue instructions to do so, and hereby agree not to hold the Board responsible for any further compensation unless the results of the election are affirmative. In other words, I will not put any further liability on the Board unless the project goes through."

This statement on the part of the plaintiff of his willingness to proceed at his own risk is entirely inconsistent with his present claim that the board could not accept the grant from the Federal authorities without becoming liable to him under its previous contract with him.

Moreover, in reply to this letter the county executive sent the plaintiff a formal authorization to proceed with the preparation of the final plans and specifications, stating, however, that, "This is given you with the distinct understanding that the Board of County Supervisors is in no way obligating itself in the event the citizens do not approve the

issuance of bonds for this purpose. This is in accordance with your letter of July 1, 1938."

From this correspondence we think it is too plain for argument that the parties agreed that the plans and specifications were to be prepared at the risk of the plaintiff, and that he was not to be paid therefor unless the necessary bond issue was ratified by the voters of the Sanitary District and "unless the project goes through." And be it remembered that it was not until after the exchange of these letters that the plaintiff proceeded to do the work for which he now seeks compensation.

That this was the agreement of the parties is, we think, further emphasized by the fact that at the board meeting held on September 9, 1938, at which the plaintiff was present, there was an acceptance of his plans and an award of the contract to the lowest bidder, both conditioned upon the approval by the voters of the bond issue and the removal of the complications resulting from the pending annexation proceedings.

Having seen that by the terms of the contract under which the plaintiff performed his services his right to compensation was contingent, we next inquire whether the stated contingencies have occurred.

In his letter of July 1 to the county executive the plaintiff stated that he realized that he would "have to take some chances on account of the Bond Election, etc.," and that he would not "hold the Board responsible for any further compensation unless the results of the election are affirmative." And he added, "In other words, I will not put any further liability on the Board unless the project goes through."

It is clear that the purpose of the language contained in the plaintiff's letter was to protect the board against an expenditure out of any fund other than that which might be raised from the Federal grant and the bond issue.

An essential step in putting the project through was the approval by the voters of the proposed bond issue in a valid election held for that purpose. While on the face of the returns of the election held on August 2, 1938, the bond

issue was approved, this election was declared void and of no effect. It was totally inadequate to support the bond issue, without which the project could not be put through.

It is argued on behalf of the plaintiff that in his letter he agreed not to hold the board liable "unless the results of the election are affirmative," and that this condition was met by a count of the votes although the election was subsequently declared void. This argument entirely overlooks the next sentence in the plaintiff's letter which reads, "In other words, I will not put any further liability on the Board unless the project goes through." Obviously the bonds could not be issued and the project carried through on a void election.

The failure of the voters to approve the bond issue at the election held on December 3, 1938, was no doubt due to the fact that the territory had been annexed to the city of Charlottesville. But the motives of the voters are immaterial. The essential fact is that the project was not desired by the voters and they rejected the bond issue. This was the very contingency upon the happening of which the plaintiff had agreed he would not be entitled to compensation.

The Board of Supervisors was in no wise responsible for the invalidity of the August 2 election or for the annexation proceedings. The hardship to the plaintiff results not from anything which the board has done, but from the bargain which the plaintiff made and which he was anxious to make. Certainly, under the circumstances related, it would be most unfair to require the county to pay for the plans and specifications which proved to be worthless to it.

The plaintiff next argues that although he may not be entitled to recover under the terms of his express contract with the board, nevertheless the latter should be required to pay for his services on a *quantum meruit* basis. In support of this contention he invokes the principle that where work is done on an express contract which is void or unenforceable, the beneficiary of the work may be liable

for the value of the services rendered under the implied contract between the parties. See *McCrowell* v. *Burson*, 79 Va. 290; *Hendrickson, Adm'x* v. *Meredith*, 161 Va. 193, 170 S. E. 602.

But this principle has no application to the instant case. Here the plaintiff claims the right to recover by virtue of an express contract. The defense is not that the contract is void or unenforceable, but that under the very terms of the agreement itself he is not entitled to compensation.

Manifestly when one has furnished services under an express contract which provides that he is not to be compensated therefor unless a certain contingency occurs and, through no fault of the other party, that contingency does not happen, he can not disregard the express terms of his agreement and recover for the value of the services rendered. The provision in the contract which makes the payment conditional is just as binding as any other term therein.

In *Ellis, etc., Co.* v. *Hubbard*, 123 Va. 481, 501, 502, 96 S. E. 754, this court held that where there is an express and enforceable contract in existence which governs the rights of the parties, the law will not imply a contract in contravention thereof.

In our opinion the judgment of the lower court is plainly right and accordingly it is

*Affirmed.*