## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Vecco Construction Industries, Inc.

v.

Myron P. Erkiletian et al.

February 28, 1985

Case No. (Law) 5798

By JUDGE DONALD H. KENT

This matter came before the Court on the defendants' motion for summary judgment.

On October 25, 1975, Vecco entered into a written agreement with Erkiletian Construction Co. ("ECC") whereby Vecco agreed to furnish all labor, materials, scaffolding, tools, equipment, services and other requisites necessary to construct two office buildings, a plaza and a garage for Stone Tract Associates, the owner. The contract price was $6,175,000.00. A "Hold Harmless Clause" was made a part of the Agreement. It provided that Vecco would waive all claims against the owner/developer and ECC for any labor and material cost incurred by Vecco and that Vecco would hold the owner/developer and ECC harmless from any claims "in the event that the owner/developer does not

obtain construction financing and the project does not proceed." Sometime in October, 1976, ECC indicated to Vecco that it had been unsuccessful in obtaining financing. Vecco claims that, during the year prior to October, 1976, ECC had assured it that financing was not a problem and that it expected it to be finalized shortly. Vecco further claims that in reliance on ECC's "assurances" it began performance of the Agreement by purchasing equipment and materials and by preparing shop drawings for the concrete work. Eventually, it was determined that the planned construction of the two buildings, plaza and garage was not economically feasible. A new project was designed and in 1979 Vecco submitted a proposal to ECC for the concrete work. On March 14, 1979, Vecco filed a proceeding in the U.S. Bankruptcy Court pursuant to Chapter XI of the Bankruptcy Act. ECC was negotiating with the Bank of New York for a construction loan for the financing of the new project. According to the terms of the loan agreement, all subcontractors were subject to approval by the bank. The bank would not approve Vecco as a subcontractor because Vecco was operating pursuant to a Chapter XI Bankruptcy plan. In order for the bank to close on the loan, ECC had to find a solvent subcontractor. In June, 1979, ECC told Vecco that its proposal was not acceptable and that another company was going to perform the concrete subcontracting work.

In addition to the written agreement of October 25, 1975, Vecco contends that it entered into an oral agreement with the defendants in 1976 whereby the defendants "reaffirmed" that Vecco would perform the concrete work on the initial project and Vecco agreed to discount by 15 percent the retention owed to it under an earlier contract, lend $200,000.00 to Park Center Associates, invest $50,000.00 in Stone Tract and execute a release of certain mechanic's liens.

Vecco's Amended Motion for Judgment alleges five causes of action: breach of express written contract, breach of express oral contract, promissory estoppel, breach of implied contract, and quasi-contract/unjust enrichment.

## A. Breach of express written contract

1. Neither party takes the position that the terms of the "Hold Harmless Clause" are unclear or ambiguous. When the terms of a contract are clear and unambiguous, "it is the duty of the court to construe [it] as it is made by the parties and not to make one for them," *W.D. Nelson & Company, Inc. v. Taylor Heights Development Corporation*, 207 Va. 386, 389 (1966). There has been no allegation that the parties intended the "Hold Harmless Clause" to be limited in its application; that is, not apply if due to some act of the defendants financing was not obtained. The meaning of the phrase "does not obtain financing and the project does not proceed" is not uncertain and there is no material fact in dispute as to the parties' interpretation. "A court must give effect to the intention of the parties as expressed in the language of their contract, and the rights of the parties must be determined accordingly," *Foti v. Cook*, 220 Va. 800, 805 (1980), see also, *Wilson v. Holyfield*, 227 Va. 184 (1984); *Lipps v. First American Service Corp.*, 223 Va. 131 (1982); *Globe Iron Construction Co. v. First National Bank of Boston*, 205 Va. 841 (1965); and *Montague Manufacturing Co. v. Homes Corp.*, 142 Va. 301 (1925).

Contrary to what Vecco asserts, the "Hold Harmless Clause" is not analogous to the "no damage" clause at issue in *Algernon Blair, Inc. v. Norfolk Redevelopment and Housing Authority*, 200 Va. 815 (1959). Vecco is correct in its analysis of the Court's decision denying the defendants' motion for summary judgment. In *Blair* there was a "genuine dispute as to how the 'no damage' clause should be construed," as "the parties themselves [had] placed upon their contract a construction different from the construction on which the defendant relied" in court. The Court's decision in the case at bar is not controlled by the decision in *Blair*.

2. *Estoppel* - Vecco asserts that even if the "Hold Harmless Clause" is enforceable as written, the defendants are estopped from asserting the clause as a defense. It is well established that "a party seeking to invoke the doctrine of estoppel must prove by clear, precise, and unequivocal evidence the following

elements: (1) a material fact was falsely represented or concealed; (2) the representation or concealment was made with knowledge of the facts; (3) the party to whom the representation was made was ignorant of the truth of the matter; (4) the representation was made with the intention that the other party should act upon it; (5) the other party was induced to act upon it; and (6) the party claiming estoppel was misled to his injury." (*Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 221 Va. 81 (1980))

Vecco has not alleged that the statements made by ECC concerning the financing were falsely represented or that such statements were made with the intention that Vecco would act upon them. In paragraph 15 of Vecco's Amended Motion for Judgment, Vecco alleges that "some delays in beginning work were experienced" during the year following the execution of the October 25, 1975, Agreement. It was, in fact, soon after October 8, 1976, that ECC notified Vecco that it was having difficulty in obtaining financing. Each element of estoppel must be established by clear, precise and unequivocal evidence. (*Morris v. Criterion Ins. Co.*, 222 Va. 496 (1981). Based upon the undisputed facts, plaintiff is not entitled to recover on the promissory estoppel theory.

### B. Breach of an express oral contract

Vecco claims that the defendants breached the alleged oral (settlement) agreement by awarding the concrete subcontract for the second project to another contractor. Under the terms of this alleged oral agreement ECC "reaffirmed" that Vecco would perform the concrete subcontracting work on the initial project. ECC was already obligated to use Vecco as the subcontractor by virtue of the October 25, 1975, written agreement. At the time this alleged oral agreement was entered into by the parties the October 25, 1975, agreement had neither been abandoned nor rescinded. The defendants obligated themselves by the oral agreement to nothing more than what they were obligated to do by the original written agreement. The Virginia Supreme Court has stated that "the general rule is that a new promise, without other consideration than the performance of an existing contract

in accordance with its terms, is a naked promise without legal consideration therefor and unenforceable." (*Seward v. Insurance Company*, 154 Va. 154, 168 (1930)).

### C. Promissory estoppel

Vecco relies on the case of *Dial v. Deskins*, 221 Va. 701 (1981), in support of its contention that the doctrine of promissory estoppel may be asserted as an independent cause of action. The only reference to promissory estoppel in that case appears in a footnote and, contrary to Vecco's interpretation, the Court fell short of expressly recognizing promissory estoppel as an offensive cause of action. Justice Poff's comments in his dissenting opinion in *Dulany Foods, Inc. v. Ayers*, 220 Va. 502, 515 (1979), state that "this Court has never expressly applied" the doctrine of promissory estoppel and "*even if* it were viable in Virginia and could be asserted offensively in an action at law," it would not have helped the plaintiffs in *Dulany*. Equitable estoppel may be raised as a defense but not as an independent cause of action.

### D. Implied contract, quasi-contract, unjust enrichment

Vecco asserts that its efforts to help the defendants redesign the office building phase were subsequent to the abandonment of the October 25, 1975, written agreement and, therefore, Vecco is not precluded from seeking recovery under an implied contract or unjust enrichment theory. There is, however, no allegation in any of the pleadings that the October 25, 1975, agreement was ever abandoned. In fact, paragraph 20 of the Amended Motion for Judgment alleges that it "was assured by Erkiletian that he expected the project to proceed eventually and that Vecco would be performing as the subcontractor for the concrete work on the project." Vecco is not claiming that the written agreement is unenforceable, yet, for purposes of its implied contract/unjust enrichment claim, Vecco says the written agreement was abandoned.

The case of *Royer v. Board of County Supervisors*, 176 Va. 268 (1940), dictates how the court ought to rule on this question. Vecco claims the right to

recover by virtue of the express written contract and, then, in the next breath, argues that if it cannot recover under the terms of that contract it should be permitted to recover under an implied contract theory. In *Royer* the express contract contained a clause that made payment contingent on the defendant's obtaining funding for the project. The Court stated, "when one has furnished services under an express contract which provides that he is not to be compensated therefor unless a certain contingency occurs and, through no fault of the other party, that contingency does not happen, he cannot disregard the express terms of his agreement and recover for the value of the services rendered. The Court further stated that "where there is an express and enforceable contract in existence which governs the rights of the parties, the law will not imply a contract in contravention thereof."

Summary judgment is granted to the defendant on each of the five counts of the plaintiff's Motion for Judgment.