THOMAS R. NEDRICH

v.

LES G. JONES, ET AL.

Record No. 920870

JOHN F. WEBER

v.

LES G. JONES, ET AL.

Record No. 920947

April 16, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, Hassell, and Keenan, JJ., and Harrison, Retired Justice

*Thomas R. Nedrich* for appellant. (Record No. 920870)
*Beverly G. Stephenson (Kenneth E. Labowitz; Gregory L. Murphy; Alan B. Croft; David G. Fiske; J. Thomas Fromme, II*, on brief), for appellees. (Record No. 920870)
*Thomas R. Nedrich* for appellant. (Record No. 920947)
*Beverly G. Stephenson* for appellees. (Record No. 920947)

JUSTICE KEENAN delivered the opinion of the Court.

The two issues presented in this appeal are whether the trial court erred in sustaining the defendants' demurrers and whether it abused its discretion in awarding sanctions against the plaintiff's attorney, pursuant to Code § 8.01-271.1.

Thomas R. Nedrich, an attorney, filed suit on behalf of his client, John F. Weber, against 16 defendants. In a 27-page motion for judgment, Weber sought damages for a bonus allegedly due under his employment agreement with Dulles Equities, Inc. (Dulles), as well as compensation for two months work allegedly due pursuant to that agreement.

The motion for judgment alleges that Les and Dorothy Jones, the sole stockholders and directors of Dulles, transferred assets out of Dulles for the purpose of hindering, defrauding, or delaying creditors. The motion for judgment includes 12 counts, setting forth various causes of action, including breach of contract, breach of fiduciary duty, constructive fraud, implied contract, and conspiracy. It also requests that the trial court impose several constructive trusts on certain property owned by Dulles or allegedly purchased with Dulles' funds.

Because the case was dismissed on demurrer, we consider as true the facts pleaded, as well as all reasonable inferences that can be drawn therefrom. *See Hop-In Food Stores, Inc. v. Serv-N-Save, Inc.*, 237 Va. 206, 207-08, 375 S.E.2d 753, 754 (1989). We shall recite the facts in accordance with this principle.

Les Jones, Dorothy Jones, and Dulles were partners in Dulles Equities Limited Partnership III (Limited III), with Dulles as a general partner and the Joneses as limited partners. Weber entered into an employment agreement with Dulles on October 28, 1987. Pursuant to that agreement, Dulles hired Weber as its Vice President for Marketing and Development for a term of three years beginning January 1, 1988. The contract further provided that, in addition to a

salary, Dulles would pay Weber a bonus for all leases that were executed by Dulles during the three-year term.

On August 24, 1988, the General Services Administration of the United States government (GSA) agreed to lease space in the Atrium Building, which was owned by Limited III. The lease agreement named Limited III as the lessor. It was signed by Les Jones as president of Dulles, the general partner of Limited III.

Weber did not receive a bonus from Dulles for procuring this lease agreement. Although he continued to work for Dulles until March 1, 1991, he also was not paid his monthly salary for January and February, 1991.

Limited III had constructed the Atrium Building with financing provided by Riggs National Bank of Washington, D.C. (Riggs). Riggs later filed suit against Dulles, Limited III, and the Joneses for defaulting on the loan. As a result of this suit, Riggs obtained title to the Atrium Building property. Thus, Riggs, or entities owned by Riggs, have received the benefit of the GSA lease.

The motion for judgment alleges that Les Jones and Dorothy Jones fraudulently diverted assets from Dulles to enrich themselves and to avoid paying creditors. The Joneses used Dulles' assets and credits to fund Armed Forces Electronics, Ltd. (Armed Forces), another company owned and controlled by Les Jones. Weber contends that the Joneses used Dulles' assets to support the continued operation of Armed Forces, and that Les Jones personally receives all of Armed Forces' profits.

Les Jones also allegedly used Dulles' funds to form another company, Dulles Equities of Virginia, Inc. (Dulles of Virginia), of which he is the sole shareholder. Les Jones sold several of Dulles' vehicles and used the proceeds to purchase new vehicles titled in the name of Dulles of Virginia.

The Joneses used Dulles' funds to lease a home for Les Jones from Trafalgar House Property, Inc. (Trafalgar). Les Jones had entered into a lease purchase contract with Trafalgar and, during the lease period, he used over $100,000 of Dulles' funds to improve the property. Trafalgar knew about these improvements, as well as the fact that Dulles was paying Les Jones's rent.

The motion for judgment further alleges that Dulles is planning to sell a Lear jet and that Les Jones intends to purchase another jet, with Dulles' funds, to be titled in his own name or that of another entity he owns. The motion for judgment names, among others, 1st Source Bank (First Source), Jet Tech, Inc. (Jet Tech), and Edward

Dahlberg, an employee of Jet Tech, as defendants aiding in the sale. First Source had provided the financing for the initial purchase of the jet; Jet Tech and Dahlberg were to act as brokers for its sale.

Each of the defendants filed a demurrer to the motion for judgment on the ground, among others, that the facts alleged failed to state a cause of action. Several of the defendants also filed motions for sanctions against Weber and Nedrich pursuant to Code § 8.01-271.1. After the trial court held a hearing on the demurrers, Weber nonsuited several defendants and removed several counts from the motion for judgment. The trial court sustained the demurrers of the remaining defendants and dismissed the action with prejudice. Weber did not object to the trial court's failure to grant leave to amend his motion for judgment. He appeals solely from the court's ruling on the demurrers.

After a separate hearing on the motion for sanctions, the trial court ruled that there was an insufficient basis to support Weber's causes of action. The court ordered Nedrich to pay six sanction awards in the amount of $3,500 each. The court denied the motions for sanctions against Weber. Nedrich appeals the sanctions awards entered against him.

## I.

## WEBER'S APPEAL

In Count I of the motion for judgment, Weber set forth the terms of his employment contract both by referring to the contract in his pleading and by attaching it thereto as an exhibit. Rule 1:4(i). In the motion for judgment, Weber also alleged that, due to his efforts, Dulles had entered into a lease agreement with GSA. However, Weber did not attach a copy of the lease to the motion for judgment.

■ The above-referenced facts, taken as true for purposes of defendants' demurrer, were sufficient to show that Dulles breached the employment agreement by refusing to pay Weber a bonus for the GSA lease. However, Dulles attached a copy of the GSA lease to its demurrer in support of its argument that Limited III, rather than Dulles, had executed the lease. Weber failed to object to Dulles' use of the lease in its argument on demurrer. Thus, on Weber's apparent acquiescence, the trial court's consideration on demurrer of a document that was not part of the motion for judgment, although a departure from the rules concerning disposition on demurrer, became the law of the case. *See Woodington Electric, Inc.*

*v. Lincoln Sav. & Loan Ass'n*, 238 Va. 623, 625-26 n.1, 385 S.E.2d 872, 873 n.1 (1989).

■ An examination of the lease shows that Dulles signed it only in its capacity as the general partner of Limited III. Since Limited III, not Dulles, entered into the lease agreement with GSA, Dulles was not required to pay Weber a bonus under the terms of their employment agreement. Therefore, we hold that Count I did not state a valid claim for breach of contract. We also hold that Dulles' failure to pay Weber a monthly salary for January and February, 1991 did not constitute breach of the employment contract because the contract term ended on December 31, 1990.

■ All of the remaining counts in the motion for judgment were premised on Weber's right to recover the sums allegedly due under the employment contract. Since Weber did not establish a valid cause of action for breach of this contract, the remaining counts also fail. Therefore, we affirm the trial court's ruling sustaining the demurrers and dismissing the case.

## II.

### NEDRICH'S APPEAL

■ Nedrich contends that the trial court abused its discretion in ordering him to pay sanctions pursuant to Code § 8.01-271.1. That section provides, in material part, that the signature of an attorney on a pleading constitutes a certificate by him that he has read the pleading and that "to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. . . ." *Id.*

■ In ruling on the sanction awards, we initially emphasize that the standard for determining whether Nedrich violated Code § 8.01-271.1 is different from the one used to determine whether defendants' demurrers were properly sustained. Even though we have affirmed the trial court's ruling on the demurrers, this does not mean that Nedrich had no chance of persuading the trial court that Weber's causes of action reasonably were warranted by existing law. *See Tullidge v. Board of Supervisors*, 239 Va. 611, 614, 391 S.E.2d 288, 290 (1990).

In considering whether Nedrich's conduct violated Code § 8.01-271.1, we apply an objective standard of reasonableness. *County of Prince William v. Rau*, 239 Va. 616, 620, 391 S.E.2d 290, 292

(1990). Therefore, we need not decide whether the motion for judgment *actually* was warranted by existing law. *See id.* Rather, we must determine whether, after reasonable inquiry, Nedrich could have formed a reasonable belief that the motion for judgment was warranted by existing law. *See id.* In reviewing the trial court's decision, we apply an abuse-of-discretion standard. *Oxenham v. Johnson*, 241 Va. 281, 287, 402 S.E.2d 1, 4 (1991). We shall examine the legal theories that Nedrich relied upon in accordance with these principles.

## A.

## AWARD TO LES JONES, DOROTHY JONES, AND DULLES

■ In earlier paragraphs incorporated by reference into Count I, Weber alleged that the Joneses used Dulles and Limited III as financial shells for their personal benefit and that Dulles and Limited III were "designed and executed [by the Joneses] with the purpose and effect of defrauding [their]creditors. . . ." Although inartfully pleaded, Weber alleged facts from which he could argue that the doctrine of corporate separateness may be ignored here, because the Joneses so organized and controlled Dulles and Limited III that each was a mere agent of the other. *Lewis Trucking Corp. v. Commonwealth*, 207 Va. 23, 32, 147 S.E.2d 747, 753-54 (1966). Therefore, we hold that Count I was objectively reasonable.

■ Count II alleged that the Joneses converted Dulles' corporate funds to their own use. However, when read as a whole, Count II does not appear to set forth a common law conversion claim. Rather, it alleges that the Joneses, who were the sole directors of Dulles, improperly converted funds and other assets of Dulles to their personal benefit *in violation of their duties as directors of the* corporation.

Although poorly drafted, Count II essentially asked the trial court to pierce the corporate veil and hold the Joneses personally liable for Dulles' debt to Weber. This Court has recognized the remedy of piercing the corporate veil as an exception to stockholder immunity; it is permitted when necessary to secure justice. *See Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987); *Lewis Trucking Corp. v. Commonwealth*, 207 Va. at 31-32, 147 S.E.2d at 753. Since Count II appears to be grounded on that principle, we conclude that it was objectively reasonable.

Count III sought judgment against the Joneses personally, based on their alleged breach of a fiduciary duty owed Weber as a corporate creditor of Dulles. Since Code § 13.1-692 allows directors of a corporation to be held personally liable to corporate creditors under certain circumstances, we conclude that, after reasonable inquiry, Nedrich could have formed a reasonable belief that this count was warranted by existing law.

In Count VII, Weber alleged that Dulles spent over $50,000 per month to maintain its Lear jet, while receiving no benefit from that expenditure. Weber asserted that Jones used the jet for his personal benefit or the benefit of other entities he owned. Weber asked the court to impose a constructive trust on profits that Jones, or entities he controlled, acquired from the use of the jet. This trust was requested for the stated purpose of satisfying any judgment Weber received against Dulles or Les Jones.

The remedy of constructive trust has been applied to profits in the hand of a defendant when the court determines that they rightfully belong to another. *See Greenspan v. Osheroff*, 232 Va. 388, 400, 351 S.E.2d 28, 36-37 (1986); *Campbell v. Corpening*, 230 Va. 45, 49-50, 334 S.E.2d 589, 592 (1985). Here, Weber alleged that Jones and certain other entities improperly acquired profits that rightfully belong to Dulles' creditors. We hold that, after reasonable inquiry, Nedrich reasonably could have concluded that, under existing law, he could seek a constructive trust for the benefit of Dulles' creditors.

Count XI alleges that Les Jones, Dorothy Jones, Dulles, and unnamed others conspired to injure Weber and other creditors of Dulles by preventing them from obtaining the monies lawfully owed them. Count XI also asked for treble damages under Code §§ 18.2-499 to -500.

In *Bowman v. State Bank*, 229 Va. 534, 541, 331 S.E.2d 797, 801 (1985), this Court stated that "there must be two persons to comprise a conspiracy, and a corporation, like an individual, cannot conspire with itself." In *Bowman*, we treated the directors of a corporation as a group, acting for the corporation and not acting individually. *Id.* at 541, 331 S.E.2d at 802. However, unlike the facts presented here, the dispute in *Bowman* involved a formal vote of a corporation's board of directors. Further, in *Bowman*, there was no allegation that the corporation was a mere financial shell operated for the personal benefit of those directors. Therefore, based on these factual differences, we conclude that Nedrich could have made a

good faith argument distinguishing *Bowman* to the effect that, if the trial court pierced the corporate veil and held the Joneses personally liable for their actions, the Joneses would be individually accountable as conspirators.

Code § 18.2-500 provides for an award of treble damages against those who conspire to injure others in their business in violation of Code § 18.2-499. This Court has held that civil damages under Code § 18.2-500 are appropriate in suits for conspiracy to procure a breach of contract. *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985). Based on the facts alleged here, we conclude that, upon reasonable inquiry, Nedrich could have formed a reasonable belief that his request for treble damages was warranted by existing law.

Finally, based on all the facts alleged in the motion for judgment against the Joneses and Dulles, we hold that, after reasonable inquiry, Nedrich reasonably could have concluded that existing law warranted a claim for punitive damages against these three defendants.

Having held that all the above counts were objectively reasonable, we reverse the trial court's award of sanctions in favor of Les Jones, Dorothy Jones, and Dulles.

### B.

### AWARD TO ARMED FORCES AND DULLES OF VIRGINIA

In Count IV, Weber alleged that Jones created Armed Forces as a scheme to hinder, delay, and defraud Dulles' creditors. Weber asked that Armed Forces' assets be held in trust to satisfy any judgment entered in favor of Weber against Dulles or Jones.

This Court has recognized a constructive trust as an equitable remedy, which can be imposed "not only where property has been acquired by fraud or improper means, but also where it has been fairly and properly acquired, but it is contrary to the principles of equity that it should be retained, at least for the acquirer's own benefit." *Leonard v. Counts*, 221 Va. 582, 589, 272 S.E.2d 190, 195 (1980) (citation omitted). Constructive trusts may be imposed on personal, as well as real, property. *See Greenspan v. Osheroff*, 232 Va. at 400-01, 351 S.E.2d at 37; *Campbell v. Corpening*, 230 Va. at 49-50, 334 S.E.2d at 592. We hold that, on the facts alleged, Nedrich reasonably could have concluded that existing law supported a request for the imposition of a constructive trust on the

funds and assets of Armed Forces for the benefit of Dulles' creditors.

 Count V requested that the trial court impose a constructive trust on the funds and assets of Dulles of Virginia. Nedrich alleged that Jones created Dulles of Virginia for the sole purpose of transferring assets out of Dulles in order to hinder, delay, and defraud creditors. He further alleged that Dulles transferred certain assets to Dulles of Virginia for this purpose. Based on these facts, we hold that our analysis of Count IV applies equally here, and we will reverse the trial court's award of sanctions in favor of Armed Forces and Dulles of Virginia.

## C. AND D.

### AWARD TO FIRST SOURCE; AWARD TO JET TECH AND DAHLBERG

In Count VI, Weber named First Source, Jet Tech, and Dahlberg as defendants, based on their alleged involvement in Les Jones's plan to sell Dulles' Lear jet. Weber asked the court to impose a constructive trust on the jet, or proceeds from its sale, in order to satisfy any judgment he obtained against Dulles or Les Jones.

 Although Weber alleges that Jones was pursuing this scheme with the "aid and assistance" of First Source, Jet Tech, and Dahlberg, he does not assert that there was a conversion of the jet. Since under the facts as pleaded, Jet Tech, Dahlberg, and First Source are innocent third parties, who have not received the jet or any proceeds from the jet, there is no basis in fact to support a cause of action for conversion or constructive fraud against these defendants. Therefore, Count VI was not objectively reasonable and we hold that the trial court did not abuse its discretion in awarding these sanctions.

### E.

### AWARD TO TRAFALGAR

In Count IX, Weber asserted that Trafalgar rendered Jones conscious aid and assistance in hindering, delaying, and defrauding Dulles' creditors. Weber alleged that Trafalgar knew that Les Jones was using Dulles' funds to make his rent payments. Weber also alleged that Les Jones used over $100,000 of Dulles' funds to

improve the leased dwelling, which was owned by Trafalgar. However, Weber does not state to whom these monies were paid.

■ While poorly pleaded and demurrable, Count IX does set forth some elements of a conspiracy claim, including an allegation that Trafalgar knowingly assisted Les Jones in an unlawful diversion of Dulles' assets.[1] *See Glass v. Glass*, 228 Va. 39, 47, 321 S.E.2d 69, 74 (1984). Further, upon a proper allegation of conspiracy, Weber validly could seek a constructive trust on the Trafalgar property. *See Greenspan v. Osheroff*, 232 Va. at 399-400, 351 S.E.2d at 36-37. For these reasons, we hold that Count IX was objectively reasonable and that the trial court abused its discretion in awarding sanctions in favor of Trafalgar.[2]

## F.

### AWARD TO RIGGS NATIONAL BANK

The final sanctions award provided $3,500 to Riggs National Bank. In Count X, Weber sought recovery of the alleged amount of his bonus from Riggs under a theory of implied contract. Weber asserted that Riggs, or entities it controlled, had received the benefit of the lease agreement with GSA.

■ We hold that this claim was not objectively reasonable. One may not recover under a theory of implied contract simply by showing a benefit to the defendant, without adducing other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit. *Mullins v. Mingo Lime & Lumber Co.*, 176 Va. 44, 51, 10 S.E.2d 492, 495 (1940). Here, Weber alleged no facts indicating that Riggs promised to pay him, or that Riggs even knew of his efforts in leasing the property.

---

[1] We note that, during the sanctions hearing, Nedrich made conflicting statements regarding the conspiracy claim against Trafalgar. He initially indicated that he was not pursuing a conspiracy claim against Trafalgar. Yet, he also argued that Trafalgar was accepting payments on Jones's house from Dulles and knew or should have known that these payments were being made in order to move assets out of the corporation. Taken as a whole, we find Nedrich's statements to be equivocal. Therefore, we rely solely on the facts as alleged in the motion for judgment in determining whether the trial court abused its discretion in awarding sanctions in favor of Trafalgar.

[2] Since we find that Count IX was objectively reasonable based on the assertion of a conspiracy and the requested remedy of a constructive trust, we need not address Trafalgar's argument concerning the additional relief requested in that count.

As alleged in the motion for judgment, Weber expended his efforts for Dulles' benefit. The law will not impose an implied contractual relationship upon parties in contravention of an express contract. *Royer v. Board of County Supervisors*, 176 Va. 268, 280, 10 S.E.2d 876, 881 (1940). In the present case, Weber's right to receive a bonus was defined by the terms of his express contract with Dulles. Therefore, since Count X was not objectively reasonable, the trial court did not abuse its discretion in awarding sanctions in favor of Riggs.

For these reasons, we will affirm in part, and reverse in part, the judgment of the trial court and enter final judgment in accordance with our holdings above.

*Affirmed in part,*
*reversed in part,*
*and final judgment.*