UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANTHONY LAYTON,
              *Plaintiff-Appellant,*

v.

MMM DESIGN GROUP,
              *Defendant-Appellee,*

and

GEORGE L. ZUIDEMA, JR.; DOES, 1
through 100 inclusive,
              *Defendants.*

No. 98-2816

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Jerome B. Friedman, District Judge.
(CA-98-636-2)

Argued: September 23, 1999

Decided: April 2, 2002

Before WIDENER and MICHAEL, Circuit Judges, and
Frank J. MAGILL, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Raymond L. Hogge, Jr., PAYNE, GATES, FARTHING
& RADD, P.C., Norfolk, Virginia, for Appellant. Beth Hirsch Ber-

man, HOFHEIMER NUSBAUM, P.C., Norfolk, Virginia, for Appellee. **ON BRIEF:** Joseph R. Lassiter, Kevin M. Drucker, HOFHEIMER NUSBAUM, P.C., Norfolk, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Anthony Layton appeals the district court's grant of judgment on the pleadings to MMM Design Group (MMM) on Layton's action for breach of the parties' employment contract. Because we conclude that Layton and MMM had an express, written, at-will employment contract, we affirm.

### I.

Layton is an engineer, and MMM, a corporation organized under Virginia law with its headquarters in Norfolk, Virginia, employs architects, engineers, and planners for construction projects, some of which are overseas. Layton's contacts with MMM regarding job opportunities began in 1984. After the Navy hired MMM for a project in Naples, Italy in March 1996, MMM attempted to hire Layton as the Project Manager and sent him an offer-letter dated May 2, 1996 outlining the terms of employment. This project fell through. MMM subsequently sent Layton another offer-letter dated July 18, 1996 outlining the terms of employment for another Navy project in Sicily. Layton accepted this offer by signing this letter and mailing it to MMM's office in Norfolk the next day. Neither offer-letter contained a termination clause. After a brief trip to Norfolk for training, Layton went to Sicily to begin employment. Shortly thereafter, MMM claims that the U.S. Navy terminated the Sicily project and its contract with MMM. Even if the reason for termination of the Navy contract was disputed, it would make no difference in our opinion. On October 8, 1996, MMM terminated Layton.

In his complaint,[1] Layton alleged that the July correspondence created an employment contract between the parties according to which he would be employed by MMM so long as his work was satisfactory. Layton further alleged that MMM could not discharge him except for "good and just cause." According to Layton's allegations, MMM breached this contract by terminating Layton after he relocated to Italy and by refusing to relocate and employ Layton in MMM's Norfolk office.

In its answer, MMM alleged that to prepare for his relocation to Italy, Layton attended meetings in Norfolk in August 1996, and while there, he signed a written employment application. This application stated that "all employment with MMM Design Group is 'at-will' . . . ." After answering Layton's complaint, MMM moved for judgment on the pleadings, arguing that: (1) Layton's employment was at-will; (2) Layton was precluded by the parol evidence rule from introducing contradictory evidence; (3) Layton provided no additional consideration for employment in Norfolk; and (4) no implied in fact contract existed as Layton alleged in his fifth claim. On November 13, 1996, the district court in Norfolk heard the case and granted the defendants' motion for judgment on the pleadings. Layton now appeals from that judgment.

We review *de novo* the district court's order granting judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). See *Gustafson v. Jones*, 117 F.3d 1015, 1017 (7th Cir. 1997). To uphold a dismissal for judgment on the pleadings, we must take the non-moving party's allegations in the complaint as true and find beyond doubt that the non-moving party can prove no set of facts in support of his claim which would entitle him to relief. See *Bruce v. Riddle*, 631 F.2d 272, 273-

---

[1]Much of the procedural history of this case is not relevant to this appeal. The action initially was filed in state court in California, removed to the federal district court, and consisted of five claims. The District Court for the Central District of California dismissed three of the claims against MMM and dismissed all of the counts against MMM's Executive Vice President, George L. Zuidema, Jr., for lack of personal jurisdiction. The last two contract claims were the only claims before the District Court for the Eastern District of Virginia, having been transferred from the district court in California.

74 (4th Cir. 1980). We conclude that the district court's judgment was correct.

## II.

The essential facts are not in dispute. We agree with the district court's conclusion that Layton's claim for breach of an express contract fails as a matter of law because the employment contract between the parties was terminable at-will. As such, MMM was not obligated to employ Layton in Norfolk after he was terminated in Italy. Under Virginia law,[2] a rebuttable presumption exists that employment is at-will when "the intended duration of a contract for rendition of services cannot be determined by fair inference from the terms of the contract." *Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 916-917 (Va. 1987). Under the at-will employment doctrine, the employee may leave his employment at any time for any reason or no reason, and the employer has the corresponding right to terminate the employee at any time for any or no reason,[3] unless a specific time is fixed for employment or the employment contract is supported by additional consideration to take it out of the employment at-will category. See *Miller*, 362 S.E.2d at 917 (relying on *Norfolk Southern Ry. Co. v. Harris*, 59 S.E.2d 110, 114 (Va. 1950), and *Sea-Land Service Inc. v. O'Neal*, 297 S.E.2d 647 (Va. 1982), for the proposition that additional consideration given by a party can create a contract for a specific term of employment). The party alleging that employment is to continue for specific duration or that the employment relationship is terminable for cause bears the burden of rebutting the at-will presumption. See *Progress Printing Co., Inc. v. Nichols*, 421 S.E.2d 428, 429, 431 (Va. 1992).

---

[2]The district court in California found that Virginia and possibly Italian law applied because the contract provided that it was to be performed in Virginia and/or Italy. The parties and the district court relied on Virginia law, as do we.

[3]The exceptions to an employer's overarching right to terminate without cause in an at-will employment relationship based on public policy and statutory grounds are irrelevant to this dispute. *See, e.g., Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 801 (Va. 1985). The district court was correct in stating that "[t]he plaintiff . . . has not identified any statutory rights that have been violated."

## A.

Layton depends on *Sea-Land Service Inc. v. O'Neal*, 297 S.E.2d 647 (Va. 1982), for the proposition that an agreement to place an employee in a particular position cannot be circumvented through the employment at-will doctrine and that such circumvention is applicable here. Brief at 11, n.1. We are of opinion that *Sea Land* does not apply. In that case, the employee involved held one position with Sea-Land, which promised to employ her in a position which was vacant but only after she resigned from the first position that she held at the time. The *Sea-Land* contract was: "She was to resign as sales representative and be employed as teletype operator and messenger." 297 S.E.2d at 651. That contract is so different from the one at issue here that the sought for reliance on *Sea-Land* is misplaced.

## B.

The agreement between Layton and MMM was created when Layton signed the offer-letter dated July 18, 1996, which set forth salary, bonus, vacation, holidays, housing, shipping, air fares, auto, and other MMM policies and procedures if Layton accepted the MMM job in Italy. Layton does not agree that the letter's language is unambiguous, but argues that the language, "[w]e intend that you join the MMM Norfolk office," "initial assignment" in Italy, "[u]pon your return to the MMM Norfolk office (following completion of the Navy assignment)," "beginning approximately Sep 98, based upon your return to the MMM Norfolk office . . . your Norfolk-based salary will be $75,000," somehow demonstrates that the parties agreed to a minimum duration for Layton's employment and, therefore, that the contract is not for at-will employment. None of these provisions, however, state an employment term or indicate that the relationship could be terminated only for cause.

A closer look at the contract reveals that MMM was hopeful the relationship between it and Layton would work out, that he would be part of its staff, that he would participate in the next stock offering, that he would accept the offer, and that the Italy assignment would be "interesting and challenging." Despite its "warm welcome" to Layton and its hopes for the future, MMM did not promise Layton that he would be employed in Norfolk no matter what occurred in Italy; the

contract states "based upon your return," not that Layton would be guaranteed to return to Norfolk. In fact, the contract language expressly states that the Italy assignment was controlled by the Navy; "[t]he Navy intends for this assignment to be multiple-year . . . [the second year] to be negotiated." Furthermore, the contract did not state that Layton was guaranteed to be placed in Norfolk if the relationship between Layton and MMM did not work out. As an at-will relationship, even if the Italy assignment had worked out perfectly, both Layton and MMM would have been at liberty to terminate the relationship for any reason or no reason.

### III.

Layton's next argument is that the district court erred by ruling that the employment application he signed in August 1996 introduced MMM's employment at-will policy into the contract. The contract contains provision 10 that states, "[e]xcept as otherwise indicated above, all MMM policies and procedures will apply." Provision 10 is significant because based on this provision, MMM policies are automatically part of the contract unless otherwise indicated in the contract; and Layton's signature below the language "ALL EMPLOYMENT WITH MMM DESIGN GROUP IS 'AT-WILL'" on the employment application indicates that he was aware of MMM's at-will employment policy.

We agree with the district court that the MMM-Layton contract is an unambiguous contract that does not state a specific term of employment, but does state that MMM policies will be applicable. Even without the introduction of the employment application signed by Layton,[4] MMM is entitled to the benefit of the at-will presumption because evidence to the contrary is not present. Nonetheless, the reasonable meaning of provision 10 is that the contract incorporates all of MMM's policies by reference, including its at-will policy and that absent a clause indicating a specific term of employment or discharge only for cause provision, at-will employment applies. See *Ames v. American Nat'l Bank of Portsmouth*, 176 S.E. 204, 216 (Va. 1934) ("[N]o word or clause is to be treated as meaningless if any reason-

---

[4]The employment application is not a change in terms of the contract and does not violate the parol evidence rule.

able meaning consistent with the other parts of the contract can be given to it; and no word or clause should be discarded unless the other words used are so specific and clear in contrary meaning to convincingly show it to be a false demonstration.").

Furthermore, the argument that the contract required MMM to return Layton to the Norfolk office to employ him even for one day is not well taken. *See Sartin v. Mazur*, 375 S.E.2d 741, 743 (Va. 1989) ("It would be absurd to require an employer, which had changed its mind . . . to actually employ the applicant for one hour or one day so that the employee could then be discharged."). Because the employment was terminable at-will, MMM was not obligated to keep Layton in its employ solely for the purpose of bringing him back to Norfolk or for any other reason.[5]

### IV.

Layton's claim for breach of implied contract fails as a matter of law because Layton and MMM had an express written contract for at-will employment. We recognize that Layton asserts his implied contract cause of action as an alternative claim, but it fails because the law will not imply a contract when the suit is upon a contract in writing. *Royer v. Board of County Supervisors*, 10 S.E.2d 876, 881 (Va. 1940). The district court in this case reasoned that "when the parties have either a written or oral agreement on a given subject, they cannot also have an implied in fact agreement concerning the same subject matter." We agree.

The judgment of the district court is accordingly

*AFFIRMED*.

---

[5]We especially note that Layton does not claim lack of reasonable notice for his discharge, which is required under Virginia law. *See, e.g.*, *Miller*, 362 S.E.2d 915, 917. During oral argument before the district court, that position was reasonably explained by the explanation of the defendant's attorney that, although terminated on October 8th, Layton was paid through December as severance pay.