## CIRCUIT COURT OF FAIRFAX COUNTY

Fairfax County
Board of Supervisors

v.

Weaver et al.

February 10, 1998

Case No. (Chancery) 139658

BY JUDGE ARTHUR B. VIEREGG, JR.

This case comes before the Court upon the motion of defendant Board of Supervisors of Fairfax County pursuant to Virginia Code § 8.01-271.1 for sanctions against the complainant Linda Marie Bara, a/k/a Linda-Marie Weaver ("Mrs. Weaver")[1] and her counsel, Ms. Marian Agnew. This motion was heard and evidence taken on November 20, 1997, after which this matter was taken under advisement. I am prepared to rule.

### Facts and Material Proceedings

The captioned cause was filed by the County against the Weavers on May 25, 1995. The County alleged the Weavers had violated the County's land disturbance ordinance in connection with their operation of a horse farm on land owned by them in Fairfax County. The case was tried on March 5 and 6, 1996. At the conclusion of the trial, this Court ruled in favor of the County. The Weavers thereafter filed multiple motions for reconsideration, which were denied. On March 22, 1996, an order was entered enjoining the Weavers from engaging in further land disturbing activities and requiring the Weavers to file a plan to remediate their property

---

[1] Mrs. Weaver's husband, Ross A. Weaver, was originally a defendant. He died after trial. His executor was never substituted in his place.

by May 6, 1996, which submission date was later continued until August 1, 1996.

By agreed order of August 7, 1996, the remediation plan was approved and was ordered to be implemented by October 31, 1996. That implementation date passed. On February 14, 1997, the County moved for a revised date for implementation of the plan, since the original implementation date had passed and had not been re-mandated by later order. Before the County's motion could be heard, the Weavers filed a motion for reconsideration alleging that Ms. Jan Brodie, Assistant Fairfax County Attorney, had perpetrated a fraud on the Court. In view of the serious nature of the charges made, by letter of February 24, 1997, this Court informed counsel that the fraud allegations would be addressed before a final order would be entered. On March 19, 1997, the Weavers additionally filed a motion for mistrial, contending that this Court made rulings on March 5, 1996, based on certain photographs which had not been introduced into evidence. Both motions were set for hearing on June 19, 1997.

On June 5, 1997, the Weavers moved to disqualify Assistant County Attorney Patrick Taves, who had made an appearance on behalf of the County, in view of the Weavers' allegations against Ms. Brodie. The motion was based on the supposition that Mr. Taves might be called by the Weavers "to testify as to his knowledge about the County's alleged Fraud on the Tribunal," principally because he had received copies of correspondence from County employees in pre-1991 correspondence related to the Weaver property. After a hearing, the motion was denied. On June 9, 1997, moreover, the Weavers filed a motion for a continuance of the June 19 hearing with respect to the Weavers' fraud on the Court allegations because an important witness, Mr. Leon Majewski, was scheduled to be out of the area. The motion was denied because Mr. Majewski had been subpoenaed. He subsequently appeared at the hearing.

At the June 19, 1997, hearing, the Weavers presented three preliminary motions filed shortly before the hearing: (i) a motion for continuance because Mr. Majewski had, in fact, not been served as a consequence of a mistake in the Clerk's Office; (ii) a renewed motion to disqualify Mr. Taves; and (iii) a motion to compel production of certain documents. In oral argument, Ms. Agnew, the Weavers' counsel, emphasized that the unsubpoenaed witness, Mr. Majewski, was necessary to authenticate certain photographs. When the County stipulated to the authenticity of the photos, the continuance motion was denied. The Court also denied the renewed motion to disqualify Mr. Taves. The Court, however, ordered the County to furnish copies of the documents sought by the Weavers for review by their

attorney, Ms. Agnew, although their motion to compel had been untimely. After a recess, afforded to permit Ms. Agnew and her clients an opportunity to review the photographs, the Court heard opening statements.

In the course of her opening statement, this Court questioned Ms. Agnew as to the factual basis for the allegations that County Attorney Brodie had committed a fraud on the Court. Ms. Agnew explained that prior to the March 5, 1996, hearing, a hearing had been held on March 1, 1995, before the Honorable Richard J. Jamborsky with regard to the County's motion for sanctions based upon the Weavers' mishandling of and failure to return Mr. Majewski's photographs provided by the County in discovery. Ms. Agnew further stated that in the course of the hearing, Judge Jamborsky requested a recess to review the photographs under consideration. These photographs taken by Mr. Majewski, a neighbor, apparently reflected the 1991 condition of the Weavers' property.[2] After the recess, Judge Jamborsky ruled[3] but failed to return the photographs to the parties. Neither counsel requested the return of the photographs. During trial on March 5 and 6, 1996, neither party attempted to introduce the Majewski photographs into evidence. At the end of the trial, this Court ruled in favor of the County. The Majewski photographs (not introduced into evidence) were returned to Ms. Brodie in open court. Ms. Agnew contended at the June 19, 1997, hearing that this Court must therefore have relied on these photographs in arriving at its decision adverse to her clients on March 6, 1996, and further that this adverse decision had occurred on account of the fraudulent conduct of Ms. Brodie in failing to retrieve the photographs from Judge Jamborsky at the March 1 hearing.

After understanding the basis for the Weavers' fraud motion, this Court dismissed the Weavers' symbiotic fraud and mistrial motions finding that the former was "one of the most groundless motions that I have ever had occasion to be confronted with while on the bench." Transcript from Hearing on June 19, 1997, at 50. This Court emphasized that Ms. Agnew, as well as Ms. Brodie, might have sought the return of the photographs and, further, that this Court would not have considered photographs that

---

[2] According to the Weavers, the photographs reflected the condition of the property prior to the Fall of 1991.

[3] Judge Jamborsky denied the County's motion for sanctions; however, he permitted the County to use the photographs to show the violations over a period of time without showing a specific date for each picture.

were not introduced into evidence. This Court then, *sua sponte*, indicated it would entertain a motion for sanctions by the County. On July 18, 1997, the County filed a motion for sanctions based on the Weavers' filing of not only the fraud motion but other allegedly groundless, dilatory motions during the pendency of the case, most filed after the determination of the Weavers' reconsideration motion alleging fraud on the Court. For reasons that will become apparent, the motions filed by Mrs. Weaver after the June 19, 1997, ruling will not be separately described. Suffice it to say, however, that following the March 6, 1996, trial and decision in favor of the County, the Weavers, and after Mr. Weaver's death, Mrs. Weaver, filed at least eighteen post-trial motions. They are enumerated in an addendum to this letter opinion entitled "Weaver Post-Trial Motions."

At the March 20, 1997, sanctions hearing, the County introduced affidavits of attorneys from the County Attorney's staff and of other Fairfax County employees itemizing the services and time devoted to the Weavers' post-trial motions and to the presentation of the County's sanctions motion. The affidavits show that the time expended by the County attorneys to address the Weavers' post-trial motions, without reference to time expended by other Fairfax County personnel, amounted to in excess of 160 hours. These affidavits further reflect that the County Attorneys' time devoted to the Weaver motions, after January 1997, when multiplied by an hourly rate based on their respective salaries, amounted to at least $7,512.00.[4] They further show the County expended at least $379.00 in costs. These affidavits were introduced without objection or contradiction.

In response, Mrs. Weaver called Ms. Brodie as an adverse witness. Ms. Brodie confirmed the events summarized above with regard to the December 1 hearing and her understanding of the circumstances relating to the photographs that had been the subject of that hearing.

Then Ms. Agnew herself testified. She began by presenting her reasons for opposing the County's case against her clients. She emphasized that the weakness in the County's case was the County's reliance on site conditions in 1991, while, in her view, the success of the County's case depended on the post-1991 site conditions of the Weaver property. She stated that, since this Court's final ruling against the Weavers had been erroneous, it must have been based on evidence of the 1991 conditions of the Weaver prop-

---

[4] Other affidavits, filed by attorneys in private practice, opined that had the County Attorneys involved been in private practice, they might have charged billing rates as high as $160.00 per hour.

erty. Ms. Agnew testified that when, after ruling, the unmarked and unoffered photographs had been returned to Ms. Brodie in open court, it was apparent that those photographs reflecting the 1991 condition of the site must have been considered by the Court in reaching its decision adverse to the Weavers. She further stated on cross-examination that since the Majewski photographs had been returned to Ms. Brodie in open court, they must have been part of the record. Ms. Agnew also testified that thereafter, so long as the County and the Weavers were making progress in negotiating an agreed remediation plan, she had not seen fit to object that the March 6, 1996, decision had been based on the unintroduced Majewski photographs. She testified further, however, that when this Court required the Weavers to post a surety bond to do the remediation work, as required by law, she determined that it was necessary to raise the issue of the photographs surmised by her to have been the foundation for this Court's adverse decision against her clients. And only then did she file the Weavers' motion for reconsideration based on fraud.

### *Virginia Code § 8.01-271.1*

Virginia Code § 8.01-271.1 provides, in pertinent part, as follows:

The signature of an attorney or party constitutes a certificate by him that . . . (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . .

If a pleading, motion, or other paper is signed or made in violation of this rule, the Court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both an appropriate sanction, which may include an order to pay the other party or parties an amount of the reasonable expenses incurred . . . .

### *Decision*

The heart of this motion for sanctions is Ms. Agnew's motion for reconsideration alleging that Ms. Brodie, the Assistant County Attorney, committed fraud upon the Court. The issues are essentially twofold:

1. Was the motion well-grounded in fact and in law after a reasonable inquiry?

2. Was the motion filed for an improper purpose?

W. Hamilton Bryson, *Motions for Sanctions*, 30 U. Rich. L. Rev. 1509, 1510 (1996).

### Well Grounded in Fact and Law

These issues, moreover, must be gauged by an objective standard. *Nedrich v. Jones*, 245 Va. 465, 471-72 (1993).

The factual issues here are not in substantial dispute. The Majewski photographs were the subject of a pre-trial hearing on December 1, 1995, before Judge Jamborsky; they were reviewed by Judge Jamborsky *in camera* but were not returned to counsel by him; neither counsel requested the return of the photographs; the photographs were not introduced in the March 5-6, 1996, trial; and they were returned in open court to Ms. Brodie after the trial because they were not part of the record. This Court decided the case contrary to the Weavers, finding that they had engaged in land-disturbing activities.

Ms. Agnew has presented no authority, either binding or persuasive, for the novel proposition that Ms. Brodie's failure to seek a return of the photos presented to Judge Jamborsky constituted fraud. Indeed, the only case law mentioned by her was *Jones v. Willard*, 224 Va. 602 (1983), in which the principles differentiating intrinsic and extrinsic fraud were explored by the Virginia Supreme Court. The fraud alleged in that case consisted of perjured testimony by an employer before the Virginia Employment Commission and pressure brought to bear against the claimant and her witness. The Court held that, on account of such allegations, the circuit court judge should have remanded the fraud charges to the Commission for consideration. The *Willard* decision, however, does not afford the slightest support for the fraud allegation made against Assistant County Attorney Brodie.

Ms. Agnew's contention that Ms. Brodie did anything improper was not only wholly without factual or legal support, it was also based on the surmise that this Court improperly considered evidence outside the record, a contention otherwise belied by the fact that the photographs had been returned to Ms. Brodie (without objection by Ms. Agnew) precisely because they had not been marked, offered, or introduced into evidence and thus not considered.

418

*An Improper Purpose*

The filing of such a baseless allegation of fraudulent and unprofessional conduct by one attorney against another is difficult to fathom. Part of the explanation, however, was manifestly an attempt to delay the entry of the final order mandating the Weavers to remediate their property in accordance with the approved plan. The County filed its motion for entry of that order on February 14, 1997. The Weavers' motion for reconsideration based on Ms. Brodie's alleged fraud on the Court was filed seven days later. Ms. Agnew testified she had only filed the motion when her clients had been unable to post a bond necessary to pursue the remediation work. The conclusion is inescapable that the reconsideration motion based on Ms. Brodie's alleged fraudulent conduct was filed to block the entry of the final remediation order.[5] This action, in and of itself, mandates an award of sanctions. The Virginia Code speaks directly to this issue and states that sanctions are appropriate if a party files a pleading solely to "cause unnecessary delay or needless increase in the cost of litigation." Virginia Code § 20-271.1(iii).

*Sanctions*

In view of Ms. Agnew's groundless actions, actions apparently agreed upon by her client, this Court will assess monetary sanctions against both Ms. Agnew and Mrs. Weaver, jointly and severally, in the amount of

---

[5] A subsidiary issue with regard to the County's sanctions motion was Ms. Agnew's pre-sanctions hearing statements that she had only filed the motion for reconsideration based on fraud on account of an alleged professional obligation to do so. She stated that her conduct in bringing Ms. Brodie's putative fraudulent conduct to the attention of this court was motivated by professional obligations owed to the court and confirmed by her in discussions with State Bar Counsel. In pre-sanctions hearing discovery, Ms. Agnew refused to identify either State Bar Counsel with whom she had conferred or the advice given, claiming as privileged her discussions with Bar Counsel. This Court ruled that testimony to such advice might not then be advanced as a defense to the County's motion for sanctions. Ms. Agnew's testimony at the sanctions hearing indicated that the making of the reconsideration motion was motivated by the Weavers' inability to post a bond for performance of the remediation work and thus not on account of Ms. Agnew's professional responsibilities to this court as earlier represented. Although the decision not to bring a fraud on the court motion is not necessarily inconsistent with her perceived obligation to allege fraud, it is at least clear that Ms. Agnew would have been quite content not to inform this court of the supposed fraudulent conduct of Ms. Brodie had her clients not been required to post the remediation bond.

$7,891.00, which amount shall be payable to the County within thirty days of the entry of the order embodying this letter decision.

These sanctions should substantially compensate the County for compensation paid to its attorneys and other personnel as to the motions brought by Ms. Agnew on behalf of Mrs. Weaver after February 21, 1997, when its original motion for entry of a final order was initially scheduled. In the absence of Ms. Agnew's ill-starred motion, this cause might have concluded at that point. This Court notes that Ms. Agnew, on behalf of Mrs. Weaver, herself, filed a motion for sanctions, which is scheduled for argument on February 17, 1998. This Court will order as an additional sanction that the motion be struck from the docket. Since the County has prevailed with respect to its motion for sanctions, it is self-evident that these long-delayed sanctions motions are untimely, inequitable, and would not have been considered but for Ms. Agnew's sanctionable conduct.

*Addendum*

*Weaver Post-Trial Motions*

| DATE FILED | MOTION FILED |
| --- | --- |
| 3/13/96 | Motion for Reconsideration |
| 4/12/96 | Motion to Dismiss for Lack of Jurisdiction |
| 4/17/96 | Motion to Dismiss for Lack of Standing |
| 2/21/97 | Motion for Reconsideration Based Upon Fraud on the Court |
| 3/19/97 | Motion for Mistrial |
| 6/5/97 | Motion to Disqualify Patrick Taves |
| 6/9/97 | Motion for Continuance |
| 6/17/97 | Motion to Reinstate Motion to Disqualify |
| 6/19/97 | Motion for Continuance |

| | |
|---|---|
| 6/19/97 | Renewed Motion to Disqualify Patrick Taves |
| 6/19/97 | Motion to Compel |
| 7/8/97 | Motion to Compel Production of OCP Photographs |
| 7/10/97 | Motion for Continuance |
| 9/12/97 | Motion to Disqualify Trial Judge |
| 10/24/97 | Motion to Reconsider Denial of Motion to Compel Production of OCP Photographs |
| 10/24/97 | Motion for Sanctions Against County |
| 11/16/97 | Motion in Limine to Allocate Time |