# CIRCUIT COURT OF THE CITY OF NORFOLK

Wonderland I, L.L.C.

v.

Paul Peck
and Jeff Saunders

August 5, 2015

Case No. CL14-8727

By Judge Junius P. Fulton, III

The Court heard argument on Defendants' Peck and Saunders demurrers on June 2, 2015. At the conclusion of the hearing, I reserved ruling pending receipt of memoranda and supplemental exhibits concerning proceedings held before the State Corporation Commission involving the same parties.

Having considered the arguments of the parties, the exhibits and applicable case law, I will sustain Defendant Peck's and Saunders' demurrers to Counts I and II: breach of contract; Counts III and IV: conspiracy claims; and overrule the demurrer to Count V: breach of fiduciary duty for the following reasons.

### Counts I and II: Breach of Contract by Peck and Saunders

The Plaintiffs contend that the actions of Peck and Saunders constitute breach of contract. To withstand demurrer, the plaintiff must allege that: (1) a legally enforceable obligation of a defendant to a plaintiff exists; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *Ramos v. Wells Fargo Bank, N.A.,* 289 Va. 321, 323, 770 S.E.2d 491, 493 (2015).

Peck and Saunders argue that the Plaintiff has failed to set forth a valid claim for breach of contract because: (i) there is no identifiable contract to bring a claim under; (ii) the document Plaintiffs appear to be relying on is invalid; and (iii) even if the Court looks to the invalidated agreement, there is no duty imposed by its terms.

In an effort to determine the document being sued on, the Court granted Defendants' Motion Craving Oyer. In their response, Plaintiffs claim that "[t]he documents imposing liability on the Defendant . . . are attached to the Complaint, all of which must be read as they are integrated. . . ." (Pls.' Resp.

to Def. Saunders' Mot. Craving Oyer at 1.) Plaintiffs then list over twenty documents from Exhibits F and G that are attached to the Complaint.

From the documents contained in those exhibits, one includes the signatures of Peck and Saunders, namely, an Operating Agreement dated "September 2010." That document also includes exhibit A which lists the members, initial capital contributions, and interests of Wonderland I, L.L.C. On that document, Peck and Saunders' stated capital contribution is $565,000.00. Their signatures appear on the signature lines below the heading "Members:".

The problem, however, is that the Plaintiffs have also asserted at various times that the September 2010 Operating Agreement is invalid. This is highlighted by the fact that the document has the words "invalid" stamped across every page. Moreover, this Court in previous litigation between the parties ruled that the November 12, 2010, Operating Agreement was the definitive Operating Agreement for these parties. (Compl. at Ex. C.) Additionally, the release agreement of September 2010 provides that Peck and Saunders were not duly admitted members of Wonderland I, L.L.C. Accordingly Peck and Saunders argue that the "September 2010" Operating Agreement is invalid and has no legal effect.

Plaintiffs counter that the agreement evidenced in the "September 2010" Operating Agreement is nevertheless binding because the State Corporation Commission allowed for the retroactive amendment of the operating agreement. In paragraph 24 of the Complaint the Plaintiffs' state that:

> [T]he Plaintiffs exercised their first opportunity to utilize the proxy with clear title to vote and control the companies, and memorialize the actual agreements between the Plaintiffs, Peck, and other parties. The corrected records of SSP and Wonderland I, L.L.C., which memorialize the actual agreements between the parties and bind the Defendants and Plaintiffs to their contractual obligations and responsibilities, are attached hereto as Exhibit F and Exhibit G, and incorporated herein.

Looking to the Final Order from the State Corporation Commission (attached to Plaintiffs' Complaint as Exhibit E), it appears that:

> the Hearing Examiner disagreed with the Petitioners' assertions that the commission has "broad authority, pursuant to § 13.1-1004 E of the Code, to retroactively modify previously filed articles of Organization as a means of eliminating all possible effects of a filer's overall *ultra vires* conduct." Instead, the Hearing Examiner determined that "the Commissioner's authority under § 13.1-1004 E of the Code is 'limited to the *correction* of the Commission's records.' Based on this Determination, the Hearing Examiner found that the

only records subject to correction under § 13.1-1004 E of the Code are the Petitioners' Articles of Organization filed in 2010, which contain statutorily required information and inaccurately identify Defendant as the only organizer of the Petitioners."

(SCC Final Order at 5-6.) The Order goes on to state that "our authority to eliminate the effects of *ultra vires* conduct under the facts of this case is limited to correcting the Articles of Organization, consistent with the Circuit Court Order." (SCC Final Order at 8.) Accordingly, it was ordered that "Petitioners may revise the Articles of Organization for each Petitioner to identify Decipher, Warren L. Holland, Jr., and Cindy Thornburg as organizers of the Petitioners." (SCC Final Order at 8.)

Despite the argument of Plaintiffs, there is nothing in the SCC Final Order which would allow the Plaintiffs to retroactively impose contractual obligations on Peck or Saunders. Accordingly, the Court will sustain the demurrer as to Count I and Count II, because Plaintiffs have failed to identify a contractual obligation.

Since the Court finds that the Operating Agreement relied on by the Plaintiffs is no longer valid and no retroactive obligation was authorized, the Court will not address the issue of whether an Operating Agreement listing a members capital contributions constitutes a legally binding contract.

*Counts III and IV: Common Law Conspiracy by Peck and Saunders*

Next, Plaintiffs claim that Peck and Saunders committed common law and statutory conspiracy. Common law conspiracy "consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Commercial Bus. Sys. v. Bellsouth Servs.*, 249 Va. 39, 48 (1995). The elements of statutory business conspiracy under Va. Code § 18.2-499 requires that two or more persons combine, associate, agree, mutually undertake, or concert together for purposes of maliciously injuring another in his reputation, trade, business, or profession. It further requires that damages be alleged which flow from a wrongful or tortious act. It further requires factual non-conclusory allegations of legal malice. *Dunlap v. Cottman Transmission Sys., L.L.C.*, 287 Va. 207, 215 (2014).

Peck and Saunders argue that Plaintiffs fail to properly state a cause of action for either counts of conspiracy for several reasons. First, Peck and Saunders claim that the intra-corporate immunity doctrine prevents the Plaintiffs from alleging a conspiracy claim. The intra-corporate immunity doctrine provides that, "there must be two persons to comprise a conspiracy, and a corporation, like an individual, cannot conspire with itself." *Nedrich v. Jones*, 245 Va. 465, 473 (1993). This is because when an agent, director, or employee acts in the scope of her employment, i.e., acts as an agent of

the corporation, then only a single entity exists, that is, the corporation. *Fox v. Deese,* 234 Va. 412, 428 (1987).

According to Plaintiffs, "Peck is liable . . . for . . . civil conspiracy . . . *as a member* of Wonderland I, L.L.C., and SSP [having been adjudicated a fiduciary as an agent of Decipher and trustee in constructive trust for the benefit of Decipher by the trial Court on November 30, 2012." (Compl. at ¶ 25) (emphasis added). Additionally, Plaintiffs allege that "Saunders is liable . . . for . . . civil conspiracy . . . *as a member* of Wonderland I, L.L.C. (Compl. at ¶ 26 (emphasis added).) Pursuant to Plaintiffs' own allegations, both Peck and Saunders were members of Wonderland, L.L.C.

Plaintiffs, however, contend that Peck and Saunders were acting outside the scope of their duties. Thus, according to Plaintiffs, Peck and Saunders acted for themselves and not for the entity, and the intra-corporate immunity doctrine does not bar the civil conspiracy claims.

Setting aside the intra-corporate immunity doctrine, the conspiracy claims fail because Plaintiffs have not pleaded an unlawful or criminal purpose, or any unlawful or criminal actions taken by Peck or Saunders.

The Complaint appears to allege that the conspiratorial act consists of misrepresenting capital contributions to the bank in order to get a loan. For instance, in the Complaint, Plaintiffs allege that, "[w]ith legal malice, the Defendants committed unlawful acts . . . to damage the Plaintiffs . . . by misrepresenting capital contributions, creating false document provisions and improper loan documents, and conspiracy to convert ownership of SSP from the Founders, in order to escape contractual obligations and unjustly enrich Peck." (Compl. at ¶ 27.) Specifically, Plaintiffs allege that Peck and Saunders conspired to commit "mortgage fraud." (Compl. at ¶ 37.) Additionally, Plaintiffs highlight an excerpt of deposition testimony from Peck in which he acknowledges Saunders backed out prior to closing, but Peck represented to the lender that Saunders remained in the deal. (See Compl. at ¶ 60.)

However, it is clear that the misrepresentation made to the bank is not the conspiratorial act at the crux of Plaintiff's claim, because Plaintiffs do not allege any resulting damage from the "mortgage fraud." (See generally Compl.) Indeed, Peck and Saunders claim that, even if it was a conspiratorial act, the loan was approved.

While not relevant to the analysis on demurrer, it is important to note that Plaintiffs received the loan despite any alleged impropriety. During the hearing on Peck and Saunders' demurrers, the following exchange took place:

> MR. McFARLAND: The loan closed. There is no damage. The loan closed. What matters is did you get the proceeds from the loan, notwithstanding Saunders did not contribute his equity. He did.

THE COURT: Answer that question.

MR. EVANS: Well, he did not contribute his equity, but we got the loan based on false statements.

THE COURT: But you still got the money?

MR. EVANS: But we were damaged in other respects.

THE COURT: How? Show me the damage.

MR. EVANS: Because we did not get — we were not able to rehab the place and then raise the rents.

(June 2, 2015, Tr. at 51:3-51:19.)

Instead, Plaintiffs appear to claim that the conspiratorial act consists of Peck and Saunders' representing to the Founders that Peck and Saunders would make capital contributions totaling $565,000.00 when Peck and Saunders knew they would not make those contributions. (See Compl. at ¶¶ 71, 73, 76.) Plaintiffs allege that as a result of that misrepresentation of Saunders intent to invest, the Founders were unable to make planned renovations to the premises because the promised capital contributions were short. (See Compl. at ¶¶ 77, 80, 81.)

However, as I have concluded in the foregoing discussion of the breach of contract claims, there was no legal obligation for Peck and Saunders to make the stated capital contributions. Accordingly, the Court finds that Saunders' decision to not invest does not constitute a wrongful act that damaged the Plaintiffs.

### Count V: Breach of Fiduciary Duty by Peck

Count V of the Complaint alleges that Peck breached his fiduciary duties. In his Amended Demurrer, Peck alleges that "Count V fails to state a cause of action against Defendants as the Plaintiffs have not attached the appropriate documents which give rise to this claim." (Am. Demurrer at 2.)

From review of the memoranda in support of the demurrer it is unclear what Peck believes the appropriate documents are in this case. Because the issue was not briefed nor addressed at the June 2 hearing, the demurrer to Count V is overruled.

In conclusion, the Court sustains the demurrers to Count I and Count II because Plaintiffs failed to allege that Peck and Saunders had a legal obligation to make capital contributions. Additionally, the Court sustains Counts III and IV because Saunders' decision not to make capital contributions is not a wrongful act within contemplation of common law or statutory conspiracy. Moreover, Peck's misrepresentation to the bank concerning the capital contributions did not result in any damages to the

88

Plaintiffs because they still received the loan. However, given the lack of argument, the Plaintiff's Count V survives demurrer.

Given the lengthy history of this litigation and the ample opportunity afforded to the Plaintiffs to set forth their claims, the foregoing demurrers that are sustained are done so without leave to amend.