# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Commonwealth of Virginia

v.

Tauber et al.

## February 7, 1997

### Case No. (Chancery) CH961241

BY JUDGE ALFRED D. SWERSKY

This matter is before the Court for a decision on the merits after trial. Upon consideration of the testimony, the exhibits filed, and the argument of counsel, the Court concludes that Complainant is entitled to the relief sought in the Bill of Complaint. The Court will enter a declaratory judgment that the assets of Jefferson Memorial Hospital, Inc. (JMHI) remain in the hands of Respondents as trustees; a custodian will be appointed to administer the assets; an accounting will be ordered; and a constructive trust imposed on all assets of JMHI. The relief sought by way of money damages will be denied.

The issues presented are dealt with as follows under the laws of Virginia.

## I. *Standing of Complainant to Bring Action*

The Court has previously ruled in the pretrial proceedings that the Attorney General has standing and authority to bring this action both at common law and pursuant to Code of Virginia, § 13.1-909(B). The Commonwealth's

6

Attorney for the City of Alexandria is a proper party to the claims based upon Code of Virginia, § 55-29.

In view of the express provisions of § 13.1-909(B), the fact that JMHI was incorporated in Maryland does not bar the Attorney General from bringing this action in Virginia. Respondents' reliance on the prohibition against the Commonwealth from regulating the "organization and internal affairs of a foreign corporation" found in § 13.1-923(C) is misplaced as this action does not seek to regulate any organization nor any internal affairs of JMHI.

Therefore, the Court concludes that this action is properly brought.

## II. *Burden of Proof*

In view of the Court's finding that the transactions shown were void (as set forth later herein), the Court has allocated the burden of proof as follows.

A. The burden rests upon Complainant to prove that the transactions are void as a breach of trust by Respondents by a preponderance of the evidence. *Baylor v. Beverly Book Co.*, 216 Va. 22 (1975); *Giannotti v. Hamway*, 239 Va. 14 (1990). Since there is an indication by way of *dicta* in *Willson v. Kable*, 177 Va. 668 (1941), that the proof must be "clear, strong, and cogent," the Court also finds that Complainant has carried such a burden.

B. Respondents have argued that the nature of transactions places this case in the line of authority that makes the transactions voidable not void. Hence, they argue they are entitled to show the fairness of the transactions. *See, Owens v. Owens*, 196 Va. 966 (1955). While the Court does not agree that the transactions are merely voidable, in such circumstances, Complainant would be required to make a *prima facie* showing of misdealings and the burdens of going forward and ultimate persuasion would rest upon Respondents to show the fairness by convincing evidence. *Owens, supra*, at 972.

## III. *Facts*

There is no real conflict in the evidence as to the facts surrounding the transactions and they are amply supported by the documents admitted into evidence.

After the acquisition of real estate by deed and lease by the King Street Joint Venture (KSJV) during 1962, 1963, and 1964, held by Respondent Tauber as trustee for the joint venture, a for-profit corporation was formed to transact the business of operating a hospital. The for-profit corporation was

chartered in Maryland in 1963 and authorized to do business in Virginia in the same year.

In 1964, the corporate charter was amended to a "Section 501(c)(3) charitable, non-profit corporation," and JMHI did business as such until 1971. The Internal Revenue Service began investigating the possible revocation of the tax-exempt status of JMHI in 1969, culminating in the revocation in 1971. The Board of JMHI had retained counsel but withdrew its protests to IRS and accepted the revocation. Counsel was retained, according to the uncontradicted evidence, to make recommendations regarding the conversion of the corporation to for-profit status with an eye to a public sale of stock.

A Delaware for-profit corporation, Jefferson Memorial Hospital Corporation (JMHC) was formed in 1971 and a putative merger was arranged. The merger, referred to as a "F" merger, was reported on tax returns filed in 1972. The record is devoid of documents to support the merger, but Respondents contend that the merger had occurred "in the minds of the directors." No evidence has been presented to show that at that time due diligence was used to protect the interests of the beneficiaries of the charitable hospital.

Efforts were made later in 1971 and again in 1973 to effectuate the merger. Documents indicate that JMHC assumed all of the liabilities of the charity in return for its assumption of JMHI assets. The charity was to receive 5,000 shares of stock in JMHC. No transfer of the stock has been made.

There are numerous transactions shown, some of-record and some not, dealing with the real estate, the equipment, the leases, and the use of tax benefits. The transactions show an entire course of self-dealing by the directors of the charity. They were able to acquire interests in the real estate, the equipment, and lease and were able to use tax benefits belonging to the former charity to enhance the gain of the for-profit corporation. The record is replete with discussions among Respondents as to their personal profits and gains with no reference to the best interests of the beneficiaries nor of the charitable corporation. The result was the total obliteration of the non-profit corporation.

As one example, the subdivision of the real estate in 1970 in which JMHI had a 65% undivided interest resulted in the loss of this interest. In its place, JMHI obtained a 20% interest consisting of an allocated parcel. No explanation is offered. In 1973, the non-profit corporation was dissolved by the State of Maryland for failure to file necessary property taxes and filing fees. In spite of this, Respondents caused to be filed a certificate with the Commonwealth that the corporation remained in good standing.

The record reveals that the interests of the charitable corporation (and hence, the beneficiaries of the charity) were given no consideration by the directors who were operating out of motives of self-gain and inurement.

The transactions are convoluted and complex with off-record real estate transactions conflicting with the state of the title as shown on-record. Net operating losses were used as tax deductions by JMHC that had become deductions as a result of the revocation of JMHI's tax exempt status. When Respondents had exhausted these deductions, they began seeking ways to benefit their own tax status through a complicated series of notes and bonds, and while some personal risk was taken, the Respondents and others were participating in the venture in basically a risk-free manner.

Respondents claim that JMHI had no value at the time it was changed to a for-profit corporation, and therefore, the transactions by which they assumed control of the corporate assets by the assumption of its liabilities were fair.

The evidence as to the valuation of this entity is conflicting. The experts have disagreed not only in their conclusions but with the methodology employed. The Court finds that in 1971, the time of the change to for-profit, the corporation (JMHI) had value. It had value as a "going concern" with growing revenues but an erratic pattern of net earnings. However, Respondents' experts are the more persuasive, and the Court finds that Respondents have carried their burden of showing that the value of the corporation did not exceed its liabilities.

However, this does not constitute a defense to the claims made here for reasons that follow.

## IV. *Trusts*

As used in this opinion, the term "void" is construed to mean voidable at the election of the cestui que trust.

The directors of a not-for-profit corporation hold the assets in trust for the beneficiaries, and their duties are identical to those imposed on trustees of a trust. *Adelman v. Conotti Corp.*, 215 Va. 782, 789 (1975).

In *Rowland v. Kable*, 174 Va. 343 (1940), the Court drew a distinction between those cases where the directors profit from the property of their corporation, in which event the transaction is void, and those cases where the director deals with the corporation with its consent, in which event the transaction is merely voidable if unfair. The Court, quoting *Deford v. Ballentine Realty Corp.*, 164 Va. 436, 440 (1935), said in stating the majority rule:

There is a distinction to be made between transactions occurring directly between a trustee and his cestui que trust and those transactions in which the trustee deals with himself in respect to the trust estate. The latter class of transactions are voidable by the cestui que trust at his election without giving any reason or alleging any fraud, or any advantage or inadequacy of price. *Rowland, supra*, at 368-69.

The actions of these directors are voidable at the option of the beneficiaries of the trust imposed upon them without proof of an actual injury. *See, Rowland, supra*, at 366; *see also, Kessler v. Commonwealth Doctors Hosp.*, 212 Va. 497 (1971). In the case of a charitable non-profit corporation, the public as represented by Complainant is the beneficiary of the trust.

At common law, then, Respondents hold the assets of JMHI in trust for the public.

In addition, it is clear under Virginia law (Maryland law being similar) that directors of a dissolved corporation become formal trustees upon dissolution and hold for the benefit of the creditors and shareholders if for-profit or for the public if non-profit. Since the Court finds that no merger of JMHI and JMHC has occurred and that the transactions by directors of JMHI are void, the assets remained in JMHI until its dissolution. At the time of dissolution, these assets passed into and remain in the hands of Respondents as trustees.

Under Code of Virginia, § 13.1-909(B), this Court has the authority to liquidate the assets and business of JMHI at any time after termination of its existence and whether the corporation was domestic or foreign. The corporation (JMHI) has property and interests located here and nowhere else. Section 13.1-910 provides the method for liquidation by appointing receivers to manage, wind up, and liquidate the corporation.

Pursuant to Code of Virginia, § 55-29, where trustees of any trust, such as that imposed on directors of a non-profit corporation, refuse to act, then the Court may, in an action against the trustees, appoint trustees to execute the trust. Here there is little doubt that the trustees, the directors of JMHI, have refused to execute the trust; thus, this Court may appoint substitute trustees.

## V. *Laches and Good Faith*

Respondents claim that an undue delay, some twenty-four years from the date of the initial transaction complained of, coupled with the death and disability of witnesses and parties, has resulted in prejudice to their ability to present a defense. Complainant argues that laches, as raised by Respondents,

10

does not apply to the Commonwealth and that the real party in interest is the Commonwealth.

The Court ruled at pretrial that Respondents would not be barred from presenting evidence on this issue, relying on authorities that seemed to hold that laches may apply in cases of a charitable corporation but that equity was reluctant to apply the doctrine in such cases. *See*, Bogert, *The Law of Trusts & Trustees*, § 411, 948 and 949 (1984).

It has been said that courts of equity are less inclined to apply the doctrine to a charitable trust or against a government. *Mount Vernon Mortgage Corp. v. United States*, 236 F.2d 724 (D.C. Cir. 1956), *cert. denied*, 77 S. Ct. 386 (1957).

In Virginia, neither the statute of limitations nor laches may be asserted as a defense in an equitable proceeding to bar the state from asserting a claim on behalf of the public. *Supervisors v. N. & W. R. Co.*, 119 Va. 763, 790 (1916), as cited in *City of Manassas v. Board of Supervisors*, 250 Va. 126 (1995). The Court concludes that this cause is brought by the Commonwealth "on behalf of the public" and not to protect private interests as argued by Respondents. Hence, laches does not apply.

Even if the doctrine could be asserted, Respondents have not carried their burden of showing that the doctrine should bar this action. While the passage of time is significant, no evidence of substantial prejudice has been shown. The transactions questioned by Complainant are clearly documented and are basically not in dispute.

No showing has been made as to what evidence Respondents have been prevented from presenting as a result of the deaths and disabilities alleged. There is one example in which JMHC was identified by an accountant who has since died as JMHI well after the purported merger. Respondents argue that this would have been shown to be a mistake by the accountant. The circumstances surrounding the document are evidence from which the Court could conclude such an error and no prejudice results to Respondents.

In addition, there is no persuasive evidence that the Commonwealth had such notice of the change in the corporate structure as to trigger its right to act. The documents reveal at best confusion and at worst an intent to mislead the authorities as to the structure of the hospital. The continued use of JMHI's tax identification number, the off-record transactions, the use of JMHI's operating license to operate the hospital, the attempts to "clean up" the transaction in later years, and failure to record and file proper documents all serve to indicate a lack of notice to Complainant. With the heavier burden resting on Tauber's shoulders because of the nature of the claim, it is clear that there has been no showing of laches in this case.

Respondents argue that they were operating in good faith and argue that many of the transactions were done with advice of counsel. In view of the Court's finding that the nature of the transactions renders them void, not voidable, the good faith of Respondents, even if shown, would not be a defense and the transactions are voided at the election of the cestui que trust. *Kessler, supra*, at 503.

In any event, the record reflects a failure on Respondents' part to give full and complete information to counsel when advice was sought and, therefore, the advice could not be asserted as a defense. If this defense was available, it would require a showing of acting in good faith on advice of reputable counsel after full disclosure of the facts. *Edwards v. Carey*, 219 Va. 90 (1978) (a case dealing with an action for malicious prosecution).

## VI. *Res Judicata*

Respondents in 1994 filed a bill in this Court to quiet title to the real property at issue in this case. Service was had by publication against unknown parties claiming an interest. The Commonwealth was not identified as a party nor served with process.

Respondents now claim that Complainant is barred by its failure to intervene and respond in that suit to protect its interests. *Res judicata* would not apply under these circumstances. *O'Hara v. Pittston Co.*, 186 Va. 325, 344-46 (1947).

Respondents failed to join the Commonwealth when they knew of the existence of the potential claim, and they now assert that the Commonwealth was a necessary party to the quiet title action so that it is bound by the judgment. Having failed to join a known party whom they claim to be necessary to an adjudication of the issues, the Respondents cannot now be heard to complain of the failure of the Commonwealth to respond.

## VII. *Remedies*

Having granted the relief sought, the Court must fashion the remedy. Counsel should schedule a prompt hearing to discuss the possible methods for carrying out the Court's ruling, including appointment of a Commissioner in Chancery, substitute trustees, or custodians.

Counsel may also wish to consider whether judicial economy is best served by an appeal pursuant to Code of Virginia, § 8.01-670(B)(3), if they are so advised.