## CIRCUIT COURT OF ARLINGTON COUNTY

Lawson & Frank, P.C.

v.

Marc E. Bettius et al.

Case No. (Chancery) CH03-270

Marc E. Bettius

v.

Lawson & Frank, P.C.

Case No. (Law) L03-115

October 7, 2004

By Judge Charles E. Poston

In theory, a written contract is neither more nor less enforceable than an oral agreement, assuming, of course, the absence of a statute requiring that the contract between the parties be reduced to writing. *See generally,* Va. Code Ann. § 11-2 (Michie 2004). Nonetheless, when a disagreement arises between the parties to a contract, a written undertaking enables resolution of the dispute with much greater facility. The Court today is called upon to resolve a dispute based upon an oral contract. Indeed, Lawson & Frank, P.C., alleges not only an oral contract but also a later oral modification of that contract.

As time passes and dissatisfaction with an oral agreement arises, the parties' respective memories of the agreement's terms may become hopelessly irreconcilable. Often, there is no attempt at deception or any subjective dishonesty; parties simply believe that their agreement *must* have addressed the problems they experience in a fashion sympathetic to their plight. Such is

the situation in this case. Here the parties have accused each other of greed, misrepresentation, and unfair dealings; and each party is absolutely convinced of the accuracy of its memory of the agreement.

Because I sit in the Fourth Judicial Circuit in Norfolk, I have had no opportunity to see the parties or their counsel either professionally or socially. Nevertheless, I am aware in a general sense that each attorney involved in this case as counsel, party, or witness enjoys a good professional reputation in the Commonwealth. Counsel for each party presented this case in the best tradition of the profession. Indeed, I can remember few cases in my career in which the parties were so ably represented. Likewise, each attorney who appeared as a witness or party demonstrated the highest standards of professionalism throughout the case. While the testimony of the witnesses differed significantly on many points, each of them, in the Court's opinion, testified honestly. Their memories of the past, though, were clearly not in harmony.

*Facts*

During the last decade, while representing INOVA Health Systems, Marc Bettius, Esquire, became convinced that Dr. Laszlo N. Tauber and others were responsible for abuses in the operation of Jefferson Memorial Hospital in Alexandria. Jefferson Memorial Hospital was a non-profit, charitable hospital, and Bettius concluded that the abuses were committed at the expense of citizens of the Commonwealth. He advised the Attorney General of his findings and on August 23, 1995, the Commonwealth appointed McCandlish & Lillard and Bettius as Special Counsel for the Office of the Attorney General in *Gilmore v. Tauber et al.* The Commonwealth agreed to compensate its Special Counsel on a contingency basis, and thereafter a suit was filed on behalf of the Commonwealth in the Alexandria Circuit Court. The court there bifurcated the trial into liability and damages phases. On February 7, 1997, the Alexandria Court awarded judgment to the Commonwealth and ordered an accounting to determine damages to be awarded, noting its belief that the hospital's liabilities exceeded its assets at that time. *Commonwealth v. Tauber*, 43 Va. Cir. 5 (1997).

Shortly after the trial court's judgment, Bettius left McCandlish & Lillard. Bettius' departure was a result of a bitter dispute between him and that firm over a number of issues, one of which involved the fees to be realized from *Tauber*. Bettius and McCandlish & Lillard later reached a settlement by which the *Tauber* fee, when realized, would be divided equally between them.

Upon leaving McCandlish & Lillard, Bettius began to search for a new firm. Because he expected the Attorney General to name him Special Counsel for the accounting phase of *Tauber*, he felt it essential to join a firm that could provide support for the management of the future *Tauber* litigation. Bettius interviewed a number of firms, and, at each interview, the status of *Tauber* was discussed as well as his need for assistance from associates in that litigation. Bettius made it clear in each interview that no part of the *Tauber* fee would be shared with the firm he joined. As Bettius testified at trial, *Tauber* was "off the table."

Lawson & Frank was one of the firms with which Bettius met. He was familiar with that firm because William B. Lawson, Sr., Esquire, who was then of-counsel to the firm, had been his mentor and law partner. In his discussions with Lawson & Frank, Bettius indicated that he wanted to return to Arlington and find a position with a smaller firm with which he could practice at a slower pace. Bettius had worked with the firm occasionally for several years because William B. Baines, Jr., Esquire, and Alan B. Frank, Esquire, the two principals of Lawson & Frank, at times sought Bettius' assistance on selected cases.

Lawson & Frank enjoyed a fine reputation in handling what may be described as transactional matters, especially those dealing with real estate. Bettius was a seasoned litigator who was expected to bring additional business to the firm. He could also train the firm's associates to handle cases in litigation, thus giving the firm a broader capability.

In March 1997, Bettius and the firm reached an agreement, the terms of which were not memorialized in writing. The following terms of their agreement are not disputed:

1. Bettius would be entitled to 2/3 of the gross fees received for cases which he brought into the firm, and the firm would be entitled to the remaining 1/3.

2. Bettius would be entitled to 1/3 of the gross fees received for cases referred to him by the firm, and the remaining 2/3 would be retained by the firm.

3. From his share of the fees, Bettius would be responsible for paying his professional expenses, office equipment expenses, and the salary and benefits of his secretary.

The Court finds that the following terms were also expressly included in their agreement:

4. The firm would not participate in the *Tauber* fee.

5. The firm would be responsible for general office expenses, such as rent and utilities.

6. Bettius would be able to use the firm's associates in his practice.

The arrangement worked well initially. Bettius brought new cases to the firm as he continued to handle the *Tauber* file. Tina Charvet, Esquire, an associate with the firm, worked with Bettius. During the course of their work together, Ms. Charvet handled some litigation and evidently became a competent litigator.

Each year from 1997 until the end of 2002, Frank and Bettius met during the year and at year's end. At each of these meetings, after reviewing rough calculations from the end-of-year reports, Frank and Bettius shook hands, agreed to close out the year, and looked forward to the following year. Neither party asked the other for an accounting or reconciliation of their accounts at these meetings. Presumably all aspects of their relationship were reviewed, or certainly there was the opportunity for such a review, and the use of associates' time was one aspect of their business relationship.

By 1999 the principals of the firm were becoming concerned with the amount of the associates' time Bettius consumed in the *Tauber* litigation. Despite this concern, no associate was directed to reduce the time spent on Bettius' work. Bettius' use of associates should not have been surprising because one of the reasons he joined the firm was to have the support staff to aid in practice, and because William B. Lawson, Sr., Esquire, had warned his son early in the negotiations that Bettius would use associates' time extensively. Throughout this period, though, Bettius continued to generate fees on cases other than *Tauber*, and those fees inured to the firm's benefit.

The accounting phase of the *Tauber* litigation finally came to an end in 2002, when the Supreme Court of Virginia affirmed a judgment of $51 million dollars entered in favor of the Commonwealth. *Tauber v. Commonwealth*, 263 Va. 520, 533, 562 S.E.2d 118, 125 (2002). Following Bettius' departure in December 2002, Lawson & Frank filed a chancery suit against Bettius in the Circuit Court for the City of Alexandria. The firm asserted that Bettius, under law and equity, should reimburse it for the resources he consumed in obtaining a favorable result in the *Tauber* litigation. In response, on February 19, 2003, Bettius filed an action at law in the Circuit Court of Arlington County, asserting that the firm had not fully paid him in accordance with the compensation agreement entered into by both parties. The Alexandria proceeding was transferred to the Arlington Circuit Court, where the two claims were consolidated and were heard before the Court through testimony *ore tenus*, exhibits, and argument of counsel on June 22-23, 2004.

*Analysis*

The primary dispute in this matter concerns mutual assent. Lawson & Frank argue that, if the Court finds that Bettius promised to make the firm whole for the *Tauber* litigation, then Bettius should be held to that promise. If the Court finds mutual assent lacking, the firm asserts that the law should apply the equitable principle that one person may not enrich himself unjustly at the expense of another.

## A. *Lawson & Frank's Claim for Breach of Express Oral Contract*

The first issue presented is whether Bettius is liable for breaching an express oral contract. The elements of breach of contract are: "(1) a legal obligation of a defendant to the plaintiff, (2) a violation or breach of that right or duty, and (3) a consequential injury or damages to the plaintiff." *Brown v. Harms*, 251 Va. 301, 306, 467 S.E.2d 805, 807 (1996) (citations omitted). In the case at bar, the conflict centers on the first element: whether Bettius was legally obligated to give Lawson & Frank a portion of the fees generated by *Tauber*.

A defendant assumes a legal obligation when he enters into a contract with a plaintiff. A contract is "an agreement between two or more persons that creates an obligation to do or not to do a particular thing." *Buchanan v. Doe*, 246 Va. 67, 72, 431 S.E.2d 289, 292 (1993) (citation omitted). There is no presumption of a contract and the making of a contract or the representations on which a contract is based must be established by a preponderance of the evidence. *Mullins v. Mingo Lime, etc., Co.*, 176 Va. 44, 49, 10 S.E.2d 492, 493 (1940). The essential elements of a contract are offer and acceptance, with valuable consideration. *Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 346, 269 S.E.2d 838, 844 (1980). To be valid and enforceable, a contract must be so certain that each party may have an action upon it and the minds of the parties must meet in mutual agreement on every material phase constituting the alleged agreement. *Belmont v. McAllister*, 116 Va. 285, 303, 81 S.E. 81, 87 (1914).

As already stated, Bettius and Lawson & Frank formed an oral agreement in March 1997. Even though the terms were never memorialized in writing, they are reasonably certain in fixing the obligations of the parties and they clearly express consideration. In addition, the parties by their actions and words have shown their mutual assent to the terms of the agreement.

Therefore, since the fundamentals of a legal contract are present, the March 1997 agreement is valid and either party could require specific execution in equity or maintain an action at law for damages in the event of a breach of the agreement. *Progressive Constr. Co. v. Thuman*, 209 Va. 24, 30, 161 S.E.2d 687, 691 (1968); *see also* Michie's Jurisprudence, *Contracts*, § 24.

Although the parties may disagree to the scope and extent of the 1997 agreement, certain terms are undisputed. In particular, the parties clearly agreed that (1) the firm would not participate in the *Tauber* fee and (2) Bettius would be able to use the firm's associates in his practice. No other terms of the contract mention or refer to the *Tauber* litigation. Based upon this evidence, it is clear that, when Bettius formed the 1997 contract, he never became legally obligated to provide any of the benefits of the *Tauber* litigation to Lawson & Frank. Without such an obligation, the firm cannot assert a valid breach of contract claim based upon its 1997 agreement.

Having held that Bettius did not breach the original contract, the Court now considers whether Bettius breached an alleged oral modification of the original 1997 agreement. The party asserting a modification of a contract carries the burden of proof, and he must demonstrate that the minds of the parties definitely met on the alteration. In Virginia, a contract modification must be proven by clear, unequivocal, and convincing evidence. *Reid v. Boyle*, 259 Va. 356, 369-70, 527 S.E.2d 137, 144-45 (2000).

In the case at bar the parties agreed at the outset of their relationship that any fees ultimately generated by *Tauber* would belong solely to Bettius and that, as a condition of his affiliation with Lawson and Frank, he would be able to utilize associates' time on the *Tauber* case. Despite this, Lawson & Frank contend that the parties' 1997 agreement was modified in September 1999, so that they are now entitled to receive a portion of the *Tauber* fee. According to the firm, Bettius and Frank met in September 1999 and discussed the use of associates on *Tauber*. At this meeting, the firm alleges, Bettius told Frank, "I will take care of you," and that vague statement, the firm asserts, is now an enforceable promise, a modification of the original contract. More specifically, the firm asserts that, in this "modification agreement," Bettius agreed to pay the hourly rate charged to clients for associates' work on *Tauber* beginning in 1997. Bettius denies absolutely that such a meeting ever took place.

At trial Lawson & Frank failed to produce any evidence, other than Mr. Frank's testimony, that supported the alleged contract modification. There were no writings memorializing the agreement, no notes or memoranda of the 1999 conversation reflecting the parties' alleged understanding, and no change in the actions of either party that could be considered consistent with the alleged modification and inconsistent with the original agreement. Further, the alleged statement neither states a sum specified nor any method for

determining damages in the event of breach. *Allen v. Aetna Cas. & Sur. Co.*, 222 Va. 361, 364, 281 S.E.2d 818, 820 (1981). Arguably expert testimony could have established some measure for determining the value of associates' time, but no such evidence was presented.

The firm did however prepare a number of "spreadsheets" to illustrate and justify their claim. These spreadsheets were prepared by Frank and are of minimal value in the case for three reasons: (1) they were prepared by Frank, who is not an accountant, has a personal financial interest in the case, and based his calculations in some respects on unsupported assumptions; (2) Frank not only prepared the spreadsheets, but is the sole source of the firm's knowledge of the alleged modification agreement; and, most importantly, (3) at the end of each year since 1997, Bettius and the firm closed out the past year and started anew the next. Had the parties met to consider their disagreement calmly and with full disclosure, this litigation may never have occurred. Obviously, the firm possessed all of the financial and time records upon which the claims are based, but the firm refused Bettius access to its books and records until this litigation had commenced.

Assuming *arguendo* that Bettius did tell Frank, "I'll take care of you," this statement, without more, is too vague to be enforceable. "It is fundamental that no person may be subjected by law to a contractual obligation, unless the character of the obligation is definitely fixed by an express or implied agreement of the parties. In order to be binding, an agreement must be definite and certain as to its terms and requirements; it must identify the subject matter and spell out the essential commitments and agreements with respect thereto." *Progressive*, 209 Va. at 30, 161 at S.E.2d 691. Because such a modification would be totally inconsistent with Bettius' stated purpose of searching for a firm and because there is no evidence of sufficient weight for the Court to conclude that the 1997 agreement was ever modified, Bettius is not legally obligated to share the *Tauber* fee with Lawson & Frank.

B. *Lawson & Frank's Claim for Breach of Implied Contract*

Lawson & Frank argue that, even if the Court denies its claim for breach of an express contract, it should yet prevail under two theories: *quantum meruit* and unjust enrichment, both of which are subsumed generally in the doctrine of implied contract. An implied contract arises from the equitable principle that one person may not enrich himself unjustly at the expense of another. *Kern v. Freed Co.*, 224 Va. 678, 299 S.E.2d 363 (1983). It is only in the absence of an express enforceable contract between the parties that the law, either at law or in equity, will from the circumstances imply a contract.

*Royer v. Board of County Supervisors*, 176 Va. 268, 10 S.E.2d 876 (1940); *Nedrich v. Jones*, 245 Va. 465, 429 S.E.2d 201 (1993).

An express contract exists when all of the terms and conditions are communicated between the parties. *Hendrickson v. Meredith*, 161 Va. 193, 200, 170 S.E. 602, 605 (1933). The court's function when a valid express contract exists is to construe that contract, not to make another contract for the parties. The rights of the parties are to be determined by the provisions of the express contract, and the law will not imply an agreement in contravention thereof. *Southern Biscuit Co. v. Lloyd*, 174 Va. 299, 311, 6 S.E.2d 601, 606 (1940). Finally, equitable principles cannot be used as a means to ignore the terms of a contract, because it exceeds the court's jurisdiction to pass upon the folly or wisdom of a contract made by the parties. Michie's Jurisprudence, *Contracts*, § 40.

In the present case, the Court has concluded that a valid oral contract was created between Bettius and Lawson & Frank in March 1997. This express oral agreement set forth all of the terms and conditions communicated between the parties. In particular the contract provided that: (1) the firm would not participate in the *Tauber* fee and (2) Bettius would be able to use the firm's associates in his practice. To recognize the firm's claim for a portion of the *Tauber* fee under a theory of implied contract would clearly be inconsistent with the express terms of the oral contract. Since such a result would be contrary to well-established Virginia law, the Court will not imply an agreement in contravention of the 1997 agreement, and the firm's claims under *quantum meruit* and unjust enrichment must fail.

## C. *Bettius's Claim for Breach of Contract*

In a separate breach of contract claim, Bettius asserts that Lawson & Frank owes him $160,105.76 as a result of the firm's failure to disburse a substantial amount of fees to him that he had earned during the course of their association. Bettius filed this claim only after the firm had initiated this litigation and was clearly a tactical response to the firm's suit. Like the firm, Bettius also presented a "spreadsheet." However, it was prepared in support of his claim by an accountant unrelated to the parties.

The firm strongly contests Bettius' claim in every respect. Bettius urges the Court to disregard the law firm's claim against him in part because each year he and the firm "closed out" that year financially and began anew; this compelling argument applies to Bettius' claims against the firm as surely as to the firm's claim against him. Thus, the Court holds that Bettius has failed to carry his burden as plaintiff to show that the law firm still owes him money.

## *Conclusion*

In sum, the Court holds that the parties entered into an express oral contract as stated above, that the alleged express oral modification agreement has not been established by clear and convincing evidence,[1] and that Bettius has not proved by the greater weight of the evidence that the firm owes him any sum.

In retrospect, the firm may well have made an undesirable bargain with Bettius. The relationship, though, was terminable at will by either party, and thus neither party was ever at loss for a remedy. The Court, therefore, is of the opinion that both Bettius' Motion for Judgment and the firm's Bill of Complaint should be dismissed and that each party should bear its own costs.

---

[1] Indeed, it has not been established even by the greater weight of the evidence.